**NORTH PITTSBURGH DRYWALL CO., INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (OWEN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2012.

Decided Jan. 9, 2013.

**32**

Robert A. Loch, Pittsburgh, for petitioner.

Ronald J. Fonner, Greensburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COVEY, Judge.

_____

OPINION BY Judge COHN JUBELIRER.

North Pittsburgh Drywall Co., Inc. (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board), which affirmed the remand decision of a Workers' Compensation Judge (WCJ) denying Employer's Petition to Suspend and/or Modify (Suspension Petition) the workers' compensation benefits of Jason Owen (Claimant), granting Claimant's Petition for Penalties (Penalty Petition), and assessing a twenty percent penalty against Employer. On appeal, Employer argues that the Board and the WCJ erred in concluding that Claimant's loss of earnings was through no fault of his own and that it violated the Workers' Compensation Act [1] (Act) by not resuming benefit payments to Claimant after a September 25, 2006 Order (Board 2006 Order) that suspended Claimant's benefits was vacated by this Court on appeal. For the following reasons, we reverse that part of the Board's Order denying the Suspension Petition, affirm that part of the Board's Order affirming the grant of the Penalty Petition and assessment of penalties, and remand for further fact finding related to Claimant's rate of pay for the light-duty position Employer offered and the duration of that position.

Claimant, a drywall installer, sustained a disabling, work-related injury to his right wrist on October 11, 2001, which Employer accepted pursuant to a Notice of Compensation Payable (NCP). Subsequently, Claimant was released to light-duty work and Employer offered Claimant a light-duty position in April 2003. Thereafter, Employer filed the Suspension Petition asserting that, despite Employer's offer of light-duty work, Claimant did not return to work. Claimant denied that he had been offered light-duty work within his medical

_____

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

restrictions. After receiving a more complete description of the light-duty position Employer offered and an indication that the position remained open and available, (Letter from Employer's Counsel to Claimant's Counsel (July 22, 2003), R.R. at 17a–18a), Claimant began working at the light-duty position. (WCJ Decision February 11, 2005 (WCJ 2005 Decision), Findings of Fact (FOF) ¶¶ 1–3, 5, 7.)

This position, which was approved by Claimant's physician,[2] consisted of, among other things, inventorying Employer's drywall supplies at its warehouse,[3] which was located approximately one and a half hours away from Claimant's home. In his previous position, Claimant had to travel approximately the same distance to install drywall. However, after his work injury had occurred, Claimant's vehicle was repossessed, and Claimant did not have the funds available to retrieve his vehicle from the lienholder.[4] Having no personal vehi-

cle to travel to Employer's warehouse, Claimant borrowed his father's vehicle and returned to work. Claimant had no difficulty performing the light-duty position but, after two or three days, Claimant's father needed his vehicle back. Without transportation, Claimant was unable to return to his light-duty position at Employer's warehouse. Employer did not pay Claimant for his light-duty work. Claimant subsequently obtained a position with a car dealer where his cousin worked, but he resigned because the cold weather bothered his right arm. (WCJ 2005 Decision, FOF ¶¶ 7–9.)

■ Following hearings at which Claimant and Employer's Owner (Owner) testified, the WCJ held that Employer did not satisfy its burden of proof under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987),[5] because Em-

2. Although Claimant's physician approved the position, Employer did not include the physician's approval when it offered Claimant the light-duty position in April 2003. (WCJ 2005 Decision FOF ¶ 9.)

3. The light-duty position required Claimant to inventory drywall, stack donnage, perform general shop maintenance, and assist with drywall removal from Employer's work sites. (Letter from Employer's Counsel to Claimant's Counsel (July 22, 2003), R.R. at 17a–18a.)

4. The Board concluded in its 2006 Opinion that, although Claimant implied that his transportation problems were related to a delay in the receipt of Claimant's benefit check, the facts of record did not support such a conclusion where the "car was repossessed approximately one week after his injury suggesting that the reasons for the repossession of Claimant's car predated Claimant's injury and was not the result of a delay by [Employer]." (Board 2006 Op. at 4.) Claimant did not raise this issue to our Court in *Owen v. Workers' Compensation Appeal Board (North Pittsburgh Drywall Co., Inc.)* (Pa.Cmwlth., No.

1925 C.D. 2006, filed June 25, 2007), and does not argue it in the present matter.

5. The *Kachinski* standard provides:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.
3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
4. If the referral fails to result in a job then the claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380. *Kachinski* was, for the most part, superseded by statute as recognized in *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 603 Pa. 74, 82–83 & n. 8, 981 A.2d 1288, 1292–93 & n. 8 (2009) (providing that, in amending Section 306(b) of the Act,

ployer did not provide available work in Claimant's area of residence. The WCJ concluded he was bound by this Court's decisions in *DME Company v. Workmen's Compensation Appeal Board (Peters)*, 162 Pa.Cmwlth. 418, 639 A.2d 869 (1994), and *Titusville Hospital v. Workmen's Compensation Appeal Board (Ward)*, 122 Pa. Cmwlth. 619, 552 A.2d 365 (1989), to hold that, because Claimant did not have transportation to the job site at which the light-duty work was located, that position was not available to Claimant. Accordingly, the WCJ denied the Suspension Petition. (WCJ 2005 Decision, FOF ¶ 12; WCJ 2005 Decision, Conclusions of Law (COL) ¶¶ 4–5.)

Employer appealed, and the Board reversed. (Board 2006 Order.) The Board indicated that *DME Company* and *Titusville Hospital* were distinguishable because they involved claimants who did not have transportation to attend interviews for modified-duty positions. The Board concluded, *inter alia*, that, pursuant to *Campbell v. Workers' Compensation Appeal Board (Foamex)*, 707 A.2d 1188 (Pa. Cmwlth.1998), in which this Court reversed the reinstatement of the claimant's benefits because the claimant's loss of earnings was not related to his work injury, but to his loss of his vehicle in divorce proceedings, any loss of earnings Claimant experienced was the result of personal reasons and was unrelated to Claimant's work injury. Accordingly, the Board reversed the WCJ's determination and granted the Suspension Petition as of April 16, 2003.

Claimant appealed to this Court, arguing that Employer was aware of his transportation difficulties and did not provide

him with "available" work in his area of residence. *Owen v. Workers' Compensation Appeal Board (North Pittsburgh Drywall Co., Inc.)* (Pa.Cmwlth., No. 1925 C.D. 2006, filed June 25, 2007), slip op. at 6 (*Owen I* ). Noting that the availability of a modified-duty position is based on the totality of the circumstances, which includes the availability of transportation, this Court nevertheless agreed with the Board that Titusville Hospital and DME Company were distinguishable because Claimant actually reported to and performed the duties of the light-duty position for two or three days. *Id.* at 8. We concluded that, in reporting to and performing the duties of the light-duty position, the position was available to Claimant and the WCJ erred in holding otherwise. *Id.* at 9–10. However, this Court indicated that, where the claimant "has accepted and performed the light-duty job, and then loses that work . . . 'the focus of the inquiry is on the [claimant's] reason for losing the job, i.e., whether the loss of earnings was through 'no fault of his own.' " *Id.* at 8 (citation omitted). Because the WCJ did not make necessary findings of fact related to why Claimant suffered a loss of earnings, i.e., the reason for losing the light-duty position, we vacated the Board's 2006 Order and remanded the matter for the WCJ to make those findings of fact. Furthermore, we remanded for the WCJ to make findings of fact regarding Claimant's rate of pay for the light-duty position and the duration of that position, which are crucial to determine whether Claimant's benefits should be reduced or suspended in their entirety or merely for a particular period of time. *Id.* at 11.

77 P.S. § 512(2), the General Assembly eliminated the requirement that an employer must offer an injured employee an actual job and "lowered the *Kachinski* burden of proof by allowing an employer to obtain modification or suspension of benefits on evidence of earning power proved through expert testimony," but noting that *Kachinski* still applies in certain circumstances).

On February 19, 2008, Claimant filed the Penalty Petition, alleging that Employer violated the Act by not paying Claimant benefits following this Court's decision in *Owen I*, which had vacated the Board's 2006 Order suspending Claimant benefits. Employer filed a timely answer denying that it had violated the Act. The Penalty Petition was assigned to the WCJ to resolve with the Suspension Petition.

On remand, the WCJ permitted Claimant and Owner to testify by deposition regarding the light-duty position and Claimant's subsequent work history.[6] The WCJ issued a decision on December 4, 2008 (WCJ 2008 Decision) and, relying on *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13, 18 (Pa.Cmwlth.2005), concluded that because there had not been a formal suspension of benefits, Claimant's disability was presumed to continue and Employer had the obligation to show that Claimant lost his job through bad faith in order to prevail on the Suspension Petition. The WCJ determined that Claimant's employment ended through no fault of his own because "[C]laimant acted in good faith in attempting to perform the position offered to him [and,] [a]lthough he had no transportation, he borrowed a vehicle for the few days he was able to do so and returned to work." (WCJ 2008 Decision, FOF ¶ 14a.) The WCJ further explained that there was no basis for suspending or modifying Claimant's benefits because Employer never paid Claimant for the two or three days of work Claimant performed; thus, there were no wages on which to base the suspension of Claimant's benefits. (WCJ 2008 Decision, FOF ¶ 14b.) Therefore, the WCJ concluded

that Employer did not meet its burden of proof on its Suspension Petition and denied the Suspension Petition. With regard to the Penalty Petition, the WCJ found that Employer did not violate the Act because this Court's remand Order required the WCJ to make additional findings of fact before the decision was complete and that only when there is a complete decision can either side be considered to have violated the Act. Thus, the WCJ denied the Penalty Petition. (WCJ 2008 Decision, FOF ¶¶ 14, 15, 17; WCJ 2008 Decision, COL ¶ 2.)

Both Employer and Claimant appealed the WCJ's 2008 Decision to the Board, and Employer filed a Petition for Supersedeas, which the Board denied by Order dated January 22, 2009. By Opinion and Order dated March 29, 2010 (Board 2010 Order), the Board concluded that the WCJ did not err in denying the Suspension Petition because Claimant still suffered a wage loss despite his good faith efforts to work the light-duty position. The Board reversed the WCJ's denial of the Penalty Petition, indicating that the WCJ erred in concluding that there could be no violation of the Act until the WCJ issued his remand decision. The Board agreed with Claimant that, once this Court vacated the Board's 2006 Order suspending Claimant's benefits, Employer was again obliged to pay Claimant's benefits. Therefore, the Board remanded the Penalty Petition to the WCJ for findings concerning the extent of the violation and the imposition of penalties within the WCJ's discretion.

The WCJ issued a third decision on August 6, 2010 (WCJ 2010 Decision) in which he found that, when this Court vacated the Board's 2006 Order suspending

---

**6.** Claimant introduced a chart in which he identified the amounts he has earned at various jobs he worked since leaving the light-duty position, thereby indicating where partial disability benefits would be appropriate. (Claimant's Dep. February 11, 2008, Ex. 1, R.R. at 176a.)

Claimant's benefits, that Order became non-existent and the only operative order was from the WCJ's 2005 Decision, which had denied Employer's request to suspend or modify Claimant's benefits. According to the WCJ, despite Claimant's requests to be paid and Claimant's filing of the Penalty Petition on February 19, 2008, Employer did not pay Claimant any benefits until February 25, 2009, approximately twenty months after this Court's Order. Therefore, the WCJ found that Employer had violated the Act and did not offer a reasonable explanation for its violation; consequently, the WCJ assessed a twenty percent penalty against Employer. (WCJ 2010 Decision, FOF ¶¶ 12, 17.)

Employer appealed to the Board, asserting that the WCJ: erred in denying the Suspension Petition, granting the Penalty Petition, and abused his discretion by assessing a twenty percent penalty against Employer. By Opinion and Order dated June 1, 2012 (Board 2012 Order), the Board affirmed the WCJ's 2010 Decision, concluding that Employer violated Section 428 of the Act, 77 P.S. § 921,[7] when it did not resume making payments to Claimant within thirty days of the date on which its obligation to pay arose and that, absent the grant of supersedeas, Employer had the burden of paying benefits throughout the litigation proceedings. (Board 2012 Op. at 3–4.) The Board concluded that Employer's obligation to pay arose when this Court vacated the Board's 2006 Order and remanded the matter to the WCJ to determine whether Employer was entitled to a suspension of benefits. Thus, according to the Board, Employer had an obligation to resume paying Claimant benefits

as of the date of this Court's Order and did not; therefore, the WCJ did not err or abuse his discretion in granting the Penalty Petition and assessing a twenty percent penalty against Employer. Employer now petitions this Court for review.[8]

On appeal, Employer first argues that Claimant is not entitled to the resumption of his benefits because Claimant's loss of earnings was of his own creation and unrelated to his work injury. Employer contends this matter is factually and legally analogous to *Beattie v. Workers' Compensation Appeal Board (Liberty Mutual Insurance Co.)*, 713 A.2d 187 (Pa.Cmwlth. 1998), and *Campbell*, in which this Court held that a claimant's loss of earnings related to non-work injury factors would not support the reinstatement of benefits. Employer asserts that the WCJ and Board erred in relying on *Virgo* to hold that it had the obligation to show bad faith on Claimant's part before suspending Claimant's benefits. Employer asserts that *Virgo* is factually distinguishable because it involved a claimant who did not voluntarily quit her employment, but who was fired for cause.

Claimant responds that *Campbell*, *Beattie*, and the other cases Employer cites are inapplicable because they involved reinstatement petitions, in which the claimants had the burden of proving that their loss of earnings was related to their work-related injuries. Instead, Claimant argues that the WCJ and the Board properly relied on *Virgo* to deny Employer's Suspension Petition because where, as here, there has been no formal suspension of

7. Section 428 was added by Section 6 of the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 921.

8. "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are sup-

ported by substantial evidence and whether constitutional rights were violated." *Moberg v. Workers' Compensation Appeal Board (Twining Village)*, 995 A.2d 385, 388 n. 1 (Pa.Cmwlth. 2010).

benefits, the burden of proof lies with the employer to establish that the claimant's loss of earnings was through no fault of his own and was the result of bad faith.[9] According to Claimant, he acted in good faith and he did not voluntarily stop working, but was forced to do so when, through no fault of his own, he lost his transportation. Thus, Claimant contends there was no error in concluding that his loss of earnings was through no fault of his own and denying Employer's Suspension Petition.

■ Section 413 of the Act, 77 P.S. § 772, provides, in pertinent part:

A[WCJ] ... may, at any time, modify ... [or] suspend ... a[NCP] ... upon proof that the disability of the injured employe has ... decreased.... Such modification ... [or] suspension ... shall be made as of the date upon which it is shown that the disability of the injured employe has ... decreased.... [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

*Id.* "The term 'disability' is synonymous with an employee's loss of earning power." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 75 n. 4 (Pa.Cmwlth.2012). As stated above, we concluded in *Owen I* that Employer had offered Claimant an available light-duty position, which Claimant accepted and began performing. *Owen I*, slip op. at 8–10. Thus, in *Owen I*, we stated that " '[i]n the case of an employee who has accepted and performed a light-duty job, and then loses that work, the focus of the inquiry is on the employee's reason for losing the job' " and remanded the matter for the WCJ to make findings relating to, among other things, Claimant's reasons for losing his light-duty position. *Id.* at 8 (quoting *Brooks v. Workers' Compensation Appeal Board (Brockway Glass)*, 770 A.2d 810, 814 (Pa.Cmwlth.2001)).

Employer relies on *Campbell* and *Beattie* to argue that Claimant's reason for his loss of earnings, his voluntarily quitting due to problems unrelated to his work injury, does not support his continued receipt of benefits under the Act. In *Campbell*, the claimant sustained a work-related injury, returned to work at a modified-duty position with a different employer, and his benefits were suspended pursuant to an agreement. Thereafter, the claimant lost his only vehicle in divorce proceedings and he no longer had transportation to his job. Having no transportation, the claimant quit his job and filed a petition to reinstate his benefits. On appeal to this Court from the Board's determination that the claimant's loss of earnings was not attributable to his work injury, the claimant argued that his non-fault loss of trans-

---

9. This Court has stated that bad faith "does not denote overt malfeasance on the part of the claimant, but is merely the characterization of [the c]laimant's action for ending [his] employment without sufficient reason." *Brooks v. Workers' Compensation Appeal Board (Brockway Glass)*, 770 A.2d 810, 813 (Pa.Cmwlth.2001). In *Virgo*, we described the "bad faith"/"lack of good faith" standard as follows:

to make out "bad faith" or "fault on the part of the discharged claimant," if an employer only shows that he or she "would if he or she could," then "bad faith" is not shown and benefits should continue or be reinstated; but if an employer establishes that the claimant "could if he or she would, and didn't," "bad faith" is established and a claimant is not entitled to continuing benefits.

*Virgo*, 890 A.2d at 19.

portation was sufficient to support the reinstatement of his benefits. This Court disagreed, stating that "once a claimant has suitable alternative employment, any loss of earning power not related to the work-related injury does not justify reinstatement of total disability benefits." *Campbell,* 707 A.2d at 1190. Because the claimant's loss of earning power was due to his lack of transportation and not to his work-related injury, we concluded that the reinstatement of benefits was not justified. *Id.* at 1191.

Similarly, in *Beattie,* the claimant sustained a work-related injury, returned to work without wage loss, and his benefits were suspended by agreement. The claimant later quit the modified position due to, *inter alia,* stress and interpersonal problems with the alternate employer's board members. The claimant sought the reinstatement of his total disability benefits, which the WCJ granted. The Board reversed, and the claimant appealed to this Court. We affirmed the Board's decision, explaining that "[w]hen a claimant voluntarily terminates his job, the claimant has the burden to prove he left due to his disability" and "where the claimant quits a job for reasons unrelated to the disability or work-related injury, benefits are not to be reinstated." *Beattie,* 713 A.2d at 188. Accordingly, this Court concluded that because the claimant did not prove that his loss of earnings was the result of his disability, the reinstatement of benefits was not warranted. *Id.* at 189.

In *Virgo,* the claimant, who continued to work for her employer following her work injury in a light-duty position, was discharged for unsatisfactory work performance. Asserting that she had not fully recovered from her injuries, as evidenced by the light-duty position, the claimant sought the reinstatement of her benefits.

The employer filed a suspension petition averring that the claimant's benefits should be suspended because her wage loss was not due to her injury, but due to her failure to perform her work duties in good faith as noted in numerous warnings and other discipline. The WCJ denied reinstatement, and granted the suspension petition, and the Board affirmed. On appeal to this Court, the claimant argued that the employer did not meet its burden of showing that she was discharged for wrongful conduct. The employer responded that the burden was on the claimant to show that her discharge was not her own fault and, alternatively, that it had met its burden of proving that the claimant's loss of earnings was due to her own conduct and not her work-related injury. Noting that the appropriate burden of proof in reinstatement cases was "murky," we indicated that our Supreme Court had attempted to clarify the standard by:

> holding that to find that a claimant failed to establish that the discharge was through no fault of his or her own, an employer must demonstrate "that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of the discharge to the claimant, such as claimant's lack of good faith."

*Virgo,* 890 A.2d at 18 (quoting *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.),* 563 Pa. 297, 310, 760 A.2d 369, 377 (2000)). However, pointing out that there had been no formal suspension of the claimant's benefits in *Virgo,* we stated that the "[e]mployer always had the burden of establishing 'lack of good faith.' " *Id.* (citing *Pappans Family Restaurant v. Workers' Compensation Appeal Board (Ganoe),* 729 A.2d 661, 665 (Pa.Cmwlth.1999)).[10] Thus, we applied the

---

**10.** In *Bufford v. Workers' Compensation Ap-*      *peal Board (North American Telecom),* 606 Pa.

standard for a suspension petition, requiring the employer to establish that there was work available within the claimant's restrictions or *that her disability, i.e., loss of earnings, was related to non-work injury factors. Id.* at 19. Concluding that the employer had established that the claimant's discharge and corresponding loss of earnings were due to her bad faith conduct, not her work-related injury, we affirmed the Board's suspension of the claimant's benefits.

Claimant and Employer argue that these cases are distinguishable based either on their procedural posture and the corresponding relevant burdens of proof (suspension versus reinstatement) or the factual bases of the claimants' separation from their modified-duty positions (voluntary versus involuntary). While these distinctions are accurate, these cases, along with several others, nevertheless are instructive on how to resolve the present matter. *Virgo*, a suspension petition case, involved a situation where the claimant was involuntarily discharged from her modified-duty position, *requiring this Court to inquire into the reasons behind*

*that discharge.* After doing so, we concluded that the employer had met its burden of proving that the claimant's loss of earnings *was not related to her work-related injury*, but to her bad faith conduct. In *Campbell* and *Beattie*, reinstatement cases, the claimants voluntarily left their modified duty positions and, in considering whether reinstatement of the benefits was proper under Section 413 of the Act, *this Court again examined the reasons behind the claimants' leaving their positions.* In doing so, we held that the personal reasons given by the claimants in *Campbell* and *Beattie* to leave their employment, i.e., loss of transportation and stress caused by interpersonal problems, respectively, were not related to the claimants' work injuries and, therefore, were legally insufficient to support the reinstatement of benefits.

Several other cases also offer guidance in this matter. In *Hertz–Penske Truck Leasing Company v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996), our Supreme Court considered whether an employer had met its burden in a termination/suspension matter where the claimant was

---

621, 2 A.3d 548 (2010), our Supreme Court again addressed the relevant burdens of proof in reinstatement proceedings. The claimant in *Bufford* had voluntarily resigned from a modified-duty position with his time-of-injury employer to accept a higher paying and less physically demanding position with an alternative employer from which he was eventually laid off due to economic reasons. The WCJ denied the claimant's reinstatement petition, concluding that the claimant's loss of earnings was due to his voluntary resignation from his position with his time-of-injury employer, not to his work-related injury, and, therefore, his loss of earnings was not through no fault of his own. The Board and this Court affirmed. The Supreme Court accepted review and, after analyzing Section 413(a) and various Supreme Court and Commonwealth Court decisions, concluded that this Court erred in "interpreting the concept of 'fault' . . . to encompass matters other than

job availability or those matters that specifically bar a claimant from reinstatement of benefits under the Act or our decisional law." *Bufford*, 606 Pa. at 635, 2 A.3d at 556–57. The Supreme Court stated that "the issue of 'fault' [was not to] be part of the claimant's burden." *Id.* at 636, 2 A.3d at 557. Furthermore, the Supreme Court indicated that the last clause of Section 413(a), "unless it be shown," shifts the burden of proof "to the party opposing reinstatement to show 'that the loss of earnings does not result from the disability due to the injury.' " *Id.* at 636–37, 2 A.3d at 557–58 (quoting 77 P.S. § 772). Notably, however, in contrast to the present matter, the claimant's alternative employment position in *Bufford involuntarily* ended and, more importantly, there is ample evidence in the record that demonstrates that Claimant's loss of earnings did "not result from the disability due to [his] injury." 77 P.S. § 772.

forced to resign a modified-duty position in lieu of the employer discharging him based on customer complaints about his work. The WCJ denied the suspension petition, reasoning that the discharge was involuntary and the claimant's actions did not amount to intentional wrongdoing, and the Board affirmed. This Court affirmed the Board's order and the Supreme Court reversed, explaining that the "focus of the inquiry [in a suspension petition] is upon the claimant's work injury" and whether the claimant's "earning power ... is no longer affected by his disability." *Hertz–Penske*, 546 Pa. at 260–61, 684 A.2d at 549 (citations omitted). In reaching this conclusion, the Supreme Court noted that "the Act was not intended as a remedy where a claimant's 'loss [in earnings] is due to factors other than such injury.'" *Id.* at 261, 684 A.2d at 549 (quoting *Harle v. Workmen's Compensation Appeal Board*, 540 Pa. 482, 488, 658 A.2d 766, 769 (1995) (alteration in original).) [11]

In *Pappans Family Restaurant*, relied upon by this Court in *Virgo*, the claimant filed a reinstatement petition after his modified duty position was terminated "for business reasons." This Court applied the standard for a suspension petition because the claimant's benefits had never been formally suspended. In affirming the continuation of the claimant's benefits, we concluded that the employer did not establish that the claimant's disability was due to factors other than his work-related injury. Notably, for the purposes of the present matter, the employer in *Pappans Family Restaurant* argued that the claimant's benefits should not be reinstated pursuant to *Campbell* and *Beattie* because the claimant did not lose his position because of his work injury. We distinguished *Campbell* and *Beattie*, noting that in those cases the claimants had "voluntarily removed themselves from the workforce, and, of course, the claimants' lack of employment and corresponding loss of earnings was not 'work related.'" *Pappans Family Restaurant*, 729 A.2d at 666 (emphasis omitted). After describing the facts and holdings in *Campbell* and *Beattie*, we explained that, because the claimants in those cases chose to leave their modified-duty positions, "the claimants' actions di-

11. The Supreme Court remanded the case in *Hertz–Penske* to the WCJ because the existing record did not contain any findings regarding the claimant's loss of earnings, i.e., whether they were related to the work injury or for work performance problems that were unrelated to the work injury. *Hertz–Penske*, 546 Pa. at 262, 684 A.2d at 550. Despite the Supreme Court's holding in *Hertz–Penske*, there are instances where a claimant may obtain a reinstatement of benefits where his loss of earnings is not strictly related to his work injury, such as when a claimant's modified-duty position ends because the employer or alternative employer closes a plant or lays off a department, because of other unforeseeable or unexpected events that are beyond the claimant's control, or when the claimant works to the best of his or her ability and simply cannot meet the standards of the employer. *See Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa. 313, 321–22, 760 A.2d 378, 383 (2000) (providing that the claimant who had returned to a modified-duty position with his time-of-injury employer is entitled to the reinstatement of his benefits when the claimant was laid off from that position due to the employer's closing of the plant at which the claimant worked and the employer did not offer claimant any other employment); *Stevens*, 563 Pa. 297, 310–11, 760 A.2d 369, 376–77 (holding that the claimant was entitled to the reinstatement of benefits where, after performing an alternative position in good faith and to the best of his ability, the claimant simply could not meet the standards required by the alternative employer and is discharged); *General Dynamics Land Systems, Inc. v. Workmen's Compensation Appeal Board (Shnipes)*, 158 Pa.Cmwlth. 144, 631 A.2d 728, 730 (1993) (stating that the claimant was entitled to the reinstatement of benefits where, after performing a light-duty position with his time-of-injury employer, he is laid off because of his lack of seniority).

rectly caused the loss of earning power, and, accordingly, in each case, it was the claimant's burden to establish that he removed himself from the workforce for reasons related to his work injury." *Id.* at 667 (emphasis omitted).

Although Claimant and Employer are correct that there are distinguishing factors in *Virgo, Beattie,* and *Campbell,* this does not alter the general principles addressed in those, as well as *Hertz–Penske* and *Pappans Family Restaurant,* decisions. In each of these cases, regardless of the procedural posture or the factual basis for the claimants' separation from their modified-duty position, this Court and the Supreme Court examined the relationship between the reason for the separation and the claimants' work injuries. If the separation was proven to be related to the claimants' work injuries, then the claimants continued to receive benefits or had their benefits reinstated. However, if the reason for separation was not related to the claimants' work injuries, either because of the claimants' bad faith conduct or voluntarily quitting for reasons unrelated to their injuries, then benefits would be suspended or not reinstated.

■ Claimant testified that he was capable of performing, and did perform, the light-duty position without difficulty, his work-related injury did not prevent him from performing those duties, and he left the light-duty position because he no longer had transportation available to him. (Hr'g Tr., February 17, 2004, at 6–8, 11, R.R. at 51a–53a, 56a; Claimant's Dep., February 11, 2008, at 9, R.R. at 164a.) Claimant testified that it was the loss of his borrowed transportation that prevented him from returning to the light-duty position. While we empathize with Claimant's transportation difficulties, it was these difficulties and not his work-related injury that led to Claimant's loss of earn-

ing power. That Claimant worked those two or three days in good faith does not alter the fact that Claimant left the light-duty position for a reason other than his work-related injury. As our Supreme Court has stated, "the Act was not intended as a remedy where a claimant's 'loss [in earnings] is due to factors other than such injury,'" *Hertz–Penske,* 546 at 261, 684 A.2d at 549 (quoting *Harle,* 540 Pa. at 488, 658 A.2d at 769 (alteration in original)), and that a "suspension of benefits is supported by a finding that the earning power of the claimant is *no longer affected by his disability,"* *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 33, 584 A.2d 301, 304 (1990) (emphasis added). Accordingly, the WCJ erred in denying the Suspension Petition based on the incorrect conclusion that Employer had to establish that Claimant's loss of earnings was the result of Claimant's bad faith.

■ Employer next argues that the Board erred in affirming the WCJ's reliance on the fact that Claimant was not paid for his two or three days of work as a basis to deny Employer's Suspension Petition. Employer contends that this issue is a red herring and that a claim for unpaid wages does not fall within the scope of the Act and should not defeat an otherwise valid suspension of Claimant's benefits. Claimant responds that because Employer did not pay him for the days he worked, his earnings for those days would be zero and, therefore, there are no earnings on which to base the suspension of Claimant's benefits.

We agree with Employer that this issue is not a reason for denying the Suspension Petition. There is no question that Employer offered Claimant a light-duty position for a particular wage, Claimant accepted that position, Claimant performed that position for two or three days, and Claimant left that position for a reason unrelated to his work injury. Although we

do not condone Employer's failure to pay Claimant the monies earned on those days, we conclude that this failure does not prevent Employer from seeking and obtaining an otherwise legally established suspension of Claimant's benefits.

Unfortunately, our review cannot end here because the WCJ still has not made all of the necessary findings of fact requested by this Court in *Owen I;* specifically, Claimant's rate of pay for the light-duty position and the duration of that position. *Owen I,* slip op. at 11. As we stated in *Owen I,* these

> are crucial factors in determining whether Claimant's compensation benefits should be reduced or suspended. *See Royal [v. Workers' Compensation Appeal Board (Mayfield Foundry, Inc.) ],* 722 A.2d [1145], 1148 [ (Pa.Cmwlth.1999) (alteration in original) ] ("[D]isability is synonymous with earning power; thus, where the employer shows that the claimant can earn pre-injury wages, the claimant is no longer disabled in the legal sense, and benefits will be suspended....")[;] .... *Jayne v. Workmen's Compensation Appeal Board (King Fifth Wheel)* [137 Pa.Cmwlth. 211], 585 A.2d 604, 608 (Pa.Cmwlth.1991) ("However, there are no findings as to Claimant's pre-injury earning capacity or the earning capacity of the new Position. These findings are necessary for us to perform our appellate review, consequently we remand....").

*Id.* at 11–12. Thus, although we would prefer not to cause further delay in this matter, in order to perform appellate review we must remand this matter to the Board for further remand to the WCJ to make specific findings of fact related to Claimant's rate of pay for the light-duty position and the duration of that light-duty position so that it can be determined "whether Claimant's compensation benefits should be reduced or suspended" and for

how long those benefits should be reduced or suspended. *Id.*

▇ Finally, Employer asserts that it did not violate the Act and, therefore, the grant of the Penalty Petition and the assessment of penalties was erroneous and an abuse of discretion. Employer argues that, because this Court's Order vacating the Board's 2006 Order and remanding the matter for further fact finding did not direct Employer to resume paying Claimant benefits, Employer had no obligation to do so. Employer further contends that this Court "remanded this case for additional fact findings as to whether Claimant was entitled to a *resumption of benefits* given the circumstances of his loss of employment after October 11, 2003," and, therefore, Claimant's right to benefits was still at issue following this Court's Order in *Owen I.* (Employer's Br. at 17 (citing *Owen I,* slip op. at 12 (emphasis added)).)

Claimant argues that when this Court vacated the Board's 2006 Order suspending Claimant's benefits, that Order became non-existent and there was no longer any authority to support the suspension of Claimant's benefits. According to Claimant, once the Board's 2006 Order was vacated, the only remaining order was the WCJ's 2005 Order denying the Suspension Petition and requiring Employer to continue paying Claimant benefits. Claimant points out that, even after the WCJ's 2008 Opinion and Order, which again denied the Suspension Petition, Employer continued to refuse to pay benefits to Claimant, did not pay Claimant anything until February 25, 2009, and Employer has not paid any benefits since. Thus, Claimant argues that Employer violated the Act and the WCJ did not err or abuse his discretion in granting the Penalty Petition and assessing a twenty percent penalty against Employer.

Initially, we disagree with Employer that *Owen I* stated that the remand was

for findings of fact to determine "whether Claimant was entitled to a *resumption of benefits* given the circumstances of his loss of employment after October 11, 2003." (Employer's Br. at 17 (emphasis added).) Instead, what this Court stated was that, because Claimant was offered and accepted an available light-duty job, "the WCJ was required to then consider the reason for Claimant's loss of the light-duty position and whether, as a result, *his compensation benefits should be reduced or suspended." Owen I,* slip op. at 10 (emphasis added).

■■■ Section 435(d)(i) of the Act [12] addresses penalties and provides:

> Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i). "[T]he [c]laimant bears the burden of establishing a violation of the Act" and, "[o]nce a violation is established, ... the burden shifts to the [e]mployer to show that no violation occurred." *Futura Agency, Inc. v. Workers' Compensation Appeal Board (Marquez),* 878 A.2d 167, 172 (Pa.Cmwlth.2005). The assessment and amount of penalties is a matter for the WCJ's discretion, which this Court will not reverse absent an abuse of discretion. *Westinghouse Electric v. Workers' Compensation Appeal Board (Weaver),* 823 A.2d 209, 213–14 (Pa. Cmwlth.2003). "An abuse of discretion is not merely an error of judgment but occurs, *inter alia,* when the law is misapplied in reaching a conclusion." *Id.*

■■ "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas or any other order ... authorizing such action." *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House),* 808 A.2d 285, 288 (Pa.Cmwlth. 2002). Until such authority is granted, "employer must continue to make payment while challenging the claimant's entitlement to benefits." *Id.* at 288–89. Moreover, the fact that the employer ultimately prevails on the merits of its petition does not alter its obligation to pay indemnity benefits during the pendency of the litigation or excuse its non-payment of benefits during the litigation period. *Graves v. Workmen's Compensation Appeal Board (LaFrance Corporation),* 680 A.2d 49, 51 (Pa.Cmwlth.1996).

Section 428 of the Act provides that, if an employer is "in default in compensation payments for thirty days or more, the employe ... entitled to compensation" may seek a judgment against the liable employer from the prothonotary of a court of common pleas. We have interpreted this section to require prompt payment of benefits. 77 P.S. § 921; *Mercer Lime and Stone Co. v. Workers' Compensation Appeal Board (McGallis),* 923 A.2d 1251, 1253–54 (Pa.Cmwlth.2007). Moreover, Section 430(a) of the Act states that the "lien of any judgment entered upon any award shall not be divested by any appeal." 77 P.S. § 971(a). Section 430(b) of the Act provides that any insurer who "refuses" to pay in accordance with any decision "without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in [S]ection 435."

---

12. Section 435 was added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 991.

77 P.S. § 971(b). Interpreting these statutory provisions together, our Supreme Court in *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Company)*, 586 Pa. 146, 162, 891 A.2d 1267, 1277 (2006), reasoned that "a penalty is at least theoretically available the very day a default occurs; thus, a 'refusal to make a payment' could warrant a penalty if it persisted a single day" and Section 428 does not create a "thirty-day, penalty-free supersedeas" period. The Supreme Court explained, however, "that an employer can be deemed in default *only if it fails to seek supersedeas while pursuing additional review* or refuses to make a compensation payment after its supersedeas request is denied." *Id.* at 163, 891 A.2d at 1278 (emphasis added).

The present matter began with Employer being obligated to pay Claimant benefits pursuant to the NCP, an obligation from which Employer sought relief pursuant to its Suspension Petition. Throughout the proceedings before the WCJ and, because the WCJ denied Employer's Suspension Petition, Employer's obligation to pay Claimant benefits continued. *Graves*, 680 A.2d at 51. There is no indication in the record that, following the WCJ's 2005 Decision, Employer sought and obtained a supersedeas; therefore, Employer remained liable for benefits throughout the proceedings before the Board. *Snizaski*, 586 Pa. at 163, 891 A.2d at 1278. It was only after the Board's 2006 Order, which reversed the WCJ's 2005 Decision and granted the suspension of Claimant's benefits, that Employer had "an[ ] ... order ... authorizing such action," i.e., the suspension of Claimant's benefits. *McLaughlin*, 808 A.2d at 288. However, this Court vacated the Board's 2006 Order and remanded for further fact finding on whether Claimant's "benefits should be reduced or suspended." *Owen I*, slip op. at 11–12.

The term "vacate" is defined as "[t]o nullify or cancel; make void; invalidate." Black's Law Dictionary 1688 (9th ed.2009). Although this Court, in *Owen I*, did not expressly state that Employer was obligated to resume making benefit payments to Claimant, when we vacated, i.e., nullified, invalidated, voided, the Board's 2006 Order suspending Claimant's benefits, there was no longer any authority on which Employer could base a suspension of benefits. Employer did not resume payments and did not request supersedeas from its obligations, even after Claimant filed the Penalty Petition on February 19, 2008. Rather, Employer waited until after the WCJ's 2008 Decision to request supersedeas from the Board, which was denied on January 22, 2009. It was only after the Board denied Employer's supersedeas request that Employer paid Claimant a lump sum for the compensation due and owing on February 25, 2009, and, according to Claimant, Employer has not made any payments since.[13]

We conclude that the approximately twenty months between this Court's June 25, 2007 order in *Owen I*, and the February 25, 2009 payment to Claimant is not the prompt payment of benefits as contemplated by Section 428 of the Act. This is not a situation, as in *Snizaski*, where the employer did not make compensation payments while a supersedeas request is pending before the Board (or this Court), which does not constitute a violation of the Act. *Snizaski*, 586 Pa. at 163–64, 891 A.2d at 1278. Absent an order authorizing the suspension of Claimant's benefits or the grant of a supersedeas, neither of which occurred here after the *Owen I* decision, Employer's actions violated the Act. The fact that Employer prevails, at least in part, on this appeal does not alter its obligations to pay benefits during the pendency of the litigation in this matter.

---

13. This Court also denied supersedeas by order dated September 17, 2012.

*Graves,* 680 A.2d at 51. Therefore, the grant of the Penalty Petition and the assessment of a twenty percent penalty [14] was not erroneous or an abuse of discretion.[15]

Accordingly, the Board's 2012 Order is hereby: (1) reversed to the extent that it affirmed the denial of the Suspension Petition; and (2) affirmed to the extent that it affirmed the grant of the Penalty Petition and award of penalties. Additionally, this matter is remanded to the Board for further remand to the WCJ to make findings of fact regarding Claimant's rate of pay for the light-duty position and the duration of that position, which "are crucial factors in determining whether Claimant's compensation benefits should be reduced or suspended." *Owen I,* slip op. at 11–12.

### ORDER

NOW, January 9, 2013, the June 1, 2012 Order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby **REVERSED** to the extent that it affirmed the denial of the Petition to Suspend and/or Modify Benefits filed by North Pittsburgh Drywall Co., Inc. (Employer); **AFFIRMED** to the extent that it affirmed the grant of the Petition for Penalties filed by Jason Owen (Claimant); and this matter is **REMAND-**ED to the Board for further remand to the Workers' Compensation Judge (WCJ) for the WCJ to make findings of fact regarding Claimant's rate of pay for the light-duty position offered by Employer, the duration of that position, and to determine whether Claimant's workers' compensation benefits should be reduced or suspended.

Jurisdiction relinquished.

---

14. Employer argues that the WCJ abused his discretion in assessing penalties as of February 11, 2005, the date of the WCJ's 2005 Decision. However, the WCJ assessed the twenty percent penalty on the lump sum Employer paid Claimant on February 25, 2009, i.e., the past due amount of compensation Employer owed Claimant ($29,343.14 × .20 = $5,868.88). (WCJ 2010 Decision, COL ¶ 3, Order.) We discern no abuse of discretion in this calculation of Employer's penalty.

15. We note, however, that, because we are remanding this matter to determine whether Employer is entitled to a total or partial suspension of benefits based on what Claimant's light-duty wages would have been and the length of the light-duty position, this situation is akin to *Ametek–Thermox Instruments Division v. Workmen's Compensation Appeal Board (Pieper),* 146 Pa.Cmwlth. 262, 605 A.2d 450, 454 (1992), in which we held that the employer was not subject to penalties where a "case has been remanded ... for a legal determination on an issue which concerns the amount of compensation to be paid." Here, having concluded that Employer is entitled to a suspension pending factual findings on the rate of pay for the light-duty position and the length of the light-duty position, the amount Employer would owe, if any, to Claimant cannot yet be calculated and, therefore, no penalty would arise for not paying benefits pending the WCJ's decision on remand.