Nancy KELLER, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (UPMC Presbyterian Shadyside), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 5, 2014.

Decided Dec. 15, 2014.

Ronald J. Fonner, Greensburg, for petitioner.

Joseph D. Talarico, Pittsburgh, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge McGINLEY.

Nancy Keller (Claimant) petitions for review from the order of the Workers' Compensation Appeal Board (Board)

which affirmed as modified the Workers' Compensation Judge's (WCJ) denial of UPMC Presbyterian Shadyside's (UPMC) Suspension Petition and found that earnings attributable to Claimant's concurrent employment at the University of Pittsburgh (Pitt) should be excluded because of her voluntary resignation, therefore reducing Claimant's average weekly wage (AWW) as of the date of resignation from Pitt to include only earnings attributable to UPMC and Monongahela Valley Hospital (Mon Valley).

The WCJ denied the Suspension Petition and made the following relevant findings of fact:

1. The claimant, Nancy Keller, sustained a work-related injury in the form of a fracture of her right wrist on November 24, 2006, during the course and scope of her employment with UPMC Presbyterian Shadyside. Pursuant to a Notice of Compensation Payable dated January 31, 2007, the claimant began receiving Workers' Compensation Benefits at the rate of $745.00 per week, based upon an average weekly wage of $2,271.36.

2. On or about November 9, 2007, the claimant filed a Petition for Penalties against the employer, requesting that penalties be assessed against the employer for having unilaterally terminated her benefits as of May 1, 2007, in violation of the Workers' Compensation Act.[1]

3. The employer filed a timely and responsive Answer, denying the material allegations contained in the claimant's Penalty Petition.

4. On or about December 6, 2007, the employer filed a Petition to Suspend Compensation Benefits against the claimant, requesting suspension of the claimant's benefits as of May 1, 2007, based upon an allegation that the claimant had voluntarily removed herself from an available work position with the employer on that date, and has failed to sign Supplemental Agreements.

5. The claimant filed a timely and responsive Answer, denying the material allegations contained in the employer's Suspension Petition. By way of further answer, the claimant averred that she was not earning wages greater than her time of injury average weekly wage while employed by the employer in modified duty, and was therefore entitled to a modification of her benefits rather than a suspension.

6. At the hearing held on April 29, 2008, the claimant submitted a corrected Notice of Compensation Payable and corrected Statement of Wages, therein reflecting a time of injury average weekly wage of $2,556.31, with a corresponding compensation rate of $745.00 per week. The Statement of Wages included the claimant's wages from her concurrent employment.

7. During the proceedings, the claimant testified by deposition on April 4, 2008, and again by deposition on April 13, 2009. She also testified at the hearing held on April 29, 2008. At the time of her April 4, 2008 deposition, she testified that at the time of her work injury in November 2006, she was employed by UPMC Presbyterian as a Primary Nurse Care Coordinator ... [t]he position also included some direct patient contact on occasions when the unit was short of nurses....

While performing her job duties on November 24, 2006, she came out of her office with papers when she fell on a wet waxed floor, falling on her right hand

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708. .

and fracturing her right wrist. She experienced immediate severe pain and was transported by wheelchair down to the emergency room. After undergoing x-rays and being treated by the emergency room physicians, she was placed in a splint and instructed to see a surgeon. She then saw the surgeon, Dr. Ronit Wollstein on November 28, 2006.

The claimant further testified that following the incident, she remained off work through the beginning of May, 2007, during which time she continued to treat with Dr. Wollstein and underwent three surgeries. She returned to UPMC Presbyterian in May 2007 at a modified light duty position . . . . [s]he did not have any direct patient care.

The claimant further testified that at the time of her work injury, she also had concurrent employment with two other employers. She worked for the University of Pittsburgh as a part time clinical instructor, adjunct faculty, and also worked for Mon Valley Hospital as a staff nurse in the emergency room. Those two positions also involved similar direct patient care. When she returned to work with UPMC Presbyterian in May 2007, she was not physically capable of returning to either of her other jobs because of the direct patient care involved.

The claimant further testified that following her return to modified light duty in May 2007, she continued working that position through July 9, 2007, at which time she left and took another teaching position with Carlow University . . . In October 2007, she was also able to return to work with Mon Valley in a modified duty position with restrictions. She has not been able to return to work her other position with the University of Pittsburgh.

The claimant further testified that at the time of her work injury, she earned a salary of $75,500.00 with UPMC Presbyterian. When she returned to work at modified duty in May 2007, she continued to earn that same salary. Her current salary with Carlow is approximately $58,500.00 . . . .

8. At the time of her April 13, 2009 deposition, the claimant testified that she continues to work at Carlow University within her modified light duty restrictions, and also continues to work her part time position with Mon Valley Hospital. Her workdays at Mon Valley vary depending upon staffing needs. Prior to her work injury, there were times that she had to refuse work at Mon Valley because it conflicted with her schedule at UPMC Presbyterian or her schedule with her position at the University of Pittsburgh. Her work schedule at Mon Valley continues to vary because of conflicts with her position at Carlow. She testified, however, that if her position at Carlow allows, she takes whatever work is available at Mon Valley.

. . . .

10. During the proceedings, the employer presented the August 15, 2008 deposition testimony of Leslie A. Hoffman, who is employed by the University of Pittsburgh School of Nursing, as well as the Department Chair for one of the three departments of the School of Nursing, which is Acute and Tertiary Care. Ms. Hoffman testified that she was familiar with the claimant during the time she was employed with the School of Nursing from 2005 through the time she resigned in 2007.

. . . .

Ms. Hoffman further testified that through an email dated November 4, 2006, the claimant informed her that she

was going to resign her teaching position because she wanted to go back to school and complete her Masters in Nursing. She testified, however, that she had no records to indicate when the claimant worked, when she didn't work, when she stopped working, and when she went back to work.

. . . .

12. Based upon the competent, credible and sufficient evidence of record, this Judge finds that the employer has failed to sustain its burden of proof necessary for suspension of the claimant's benefits as of May 1, 2007. In so finding, this Judge has carefully considered all of the evidence presented by both parties, and finds that evidence presented by the claimant to be more credible and persuasive.

In so finding, this Judge first notes that following her November 24, 2006 work injury while employed at UPMC Presbyterian Shadyside, the claimant also had concurrent employment, consisting of a part time clinical instructor position with the University of Pittsburgh, as well as a part time staff nurse in the emergency room at Mon Valley Hospital. As indicated in the corrected Statement of Wages issued by the employer, the claimant's indemnity benefits were based upon not only her time of injury average weekly wage with UPMC Presbyterian Shadyside, but also her wages from her concurrent employment with the University of Pittsburgh and Mon Valley Hospital.

Based upon the testimony of the claimant, which this Judge finds to be credible, persuasive and uncontradicted, when she returned to the modified duty position with UPMC Presbyterian Shadyside in May 2007, she was not physically capable of returning to her concurrent employment with the University of Pittsburgh or Mon Valley Hospital, and continued to incur a loss of wages as a result of her physical inability to return to those positions. As a result, although the modified duty position with UPMC Presbyterian Shadyside paid wages equal to or greater than her time of injury average weekly wage with that employer, she continued to suffer a wage loss as a result of her inability to return to her concurrent employment. The employer having presented no evidence to the contrary, this Judge finds that the claimant continued to suffer a loss of wages after returning to modified duty work in May 2007, and the employer had no basis to suspend her benefits at that time.

This Judge further finds that after returning to work in the modified duty position with UPMC Presbyterian Shadyside, the claimant voluntarily left that position on July 9, 2007, at which time she took her current teaching position with Carlow University. However, this Judge does not find that the claimant's voluntarily leaving her time of injury position with UPMC Presbyterian Shadyside provided the employer with a basis to suspend her benefits. To the contrary, this Judge finds that the claimant's voluntary resignation from her employment at UPMC Presbyterian Shadyside to take the lower paying position with Carlow University simply allows the employer to continue calculating the claimant's entitlement to partial disability benefits based upon the higher wages at UPMC Presbyterian Shadyside, but does not entitle the employer to a suspension of benefits.

In so finding, this Judge has also considered the employer's argument that prior to her work injury, the claimant indicated in her correspondence of August 2, 2006 that she was resigning her position with the University of Pittsburgh School

of Nursing, and as a result, that concurrent employment position should not be included in any calculation regarding future temporary partial disability payments. However, this Judge finds that in her August 2, 2006 correspondence, the claimant indicated that she was resigning her position as a full time clinical instructor, and that she was making herself available for continued work in a part time status. *Further correspondence indicates that a part time position was offered to her, and it was a part time instructor position that she was, in fact, working at the time of her November 24, 2006 injury.* As such, this Judge finds no basis to exclude the claimant's concurrent employment with the University of Pittsburgh in the calculation of temporary partial disability benefits owed.

Based upon the competent, credible and sufficient evidence of record, this Judge finds that the employer violated the terms and provisions of the Act by suspending the claimant's benefits in May 2007 without any legal basis....As a result, this Judge finds the employer's actions in this matter to be completely unreasonable and have caused excessive delay in the payment of the claimant's partial disability benefits, and a penalty in the amount of fifty (50) percent of the past due benefits due and owing to the claimant shall be assessed against the employer.

. . . .

### CONCLUSIONS OF LAW

. . . .

2. The employer has failed to sustain its burden of proving entitlement to a suspension of the claimant's benefits as of May 1, 2007 based upon an allegation that the claimant had voluntarily removed herself from an available work position with the employer on that date.

3. The claimant has sustained her burden of proving that the employer violated the terms and provisions of the Act by unilaterally suspending her benefits as of May 1, 2007 without any legal basis.

WCJ's Decision, February 24, 2010, Finding of Fact Nos. 1–8, 10 and 12 at 1–6 and Conclusions of Law Nos. 2 and 3 at 7. (Emphasis added.)

UPMC appealed and the Board affirmed as modified:

Section 306(b)(1) of the Workers' Compensation Act (Act) ... 77 P.S. § 512(1), provides that partial disability benefits are to be based on the difference between the claimant's pre-injury AWW ... and her earning power.

. . . .

The only issue relevant to a suspension of indemnity benefits is whether the claimant's loss of earnings is no longer the result of the work injury. If the loss of earnings results from a factor other than the work injury, benefits must be suspended. *Edwards v. W.C.A.B. (Sear's Logistic Servs.),* 770 A.2d 805 (Pa.Cmwlth.2001). The employer may suspend indemnity benefits when the claimant quits voluntarily because the loss of earnings is then not caused by the injury, but by the claimant's voluntary decision to abandon the employment. *Hertz–Penske Truck Leasing Co. v. W.C.A.B. (Bowers)* [546 Pa. 257], 684 A.2d 547 (Pa.1996).

. . . .

We agree that indemnity benefits attributable to Claimant's concurrent employment at University of Pittsburgh [Pitt] should be suspended as of her voluntary resignation from University of Pittsburgh [Pitt] effective December 31, 2006....Under these facts, therefore,

Claimant's AWW is reduced to the sum of her AWW with Defendant [UPMC] and her AWW with Mon Valley as of her resignation from University of Pittsburgh [Pitt].

Board's Opinion, February 14, 2014, at 3, 4, 6, and 7.

■ On appeal to this Court, Claimant contends[2] that the Board erred when it modified the WCJ's Order and determined that Claimant's pre-injury wages at Pitt should not be included in calculating Claimant's post-injury partial benefits.

Here, the record indicates that Claimant submitted a letter of resignation to Pitt on August 2, 2006, which stated:

This letter is to inform you that I will be resigning my position as fulltime clinical instructor at the University of Pittsburgh School of Nursing ... due to personal reasons. As per our discussion, I will be available to transfer to a parttime [sic] clinical instructor status beginning the fall term....I look forward to working with you in the fall ...

R.R. at 260a.

Claimant acknowledged that she sent this email to her supervisor, and intended to resign on December 31, 2006, but argued that her unavailability was temporary because she would be available to work for Pitt again in fall 2007.

However, UPMC contends that Claimant's statement that she "hope[s] to work for Pitt in the future" merely indicated Claimant's intent to return to work for Pitt. UPMC contends that Claimant resigned from her employment with Pitt prior to her work injury, and did so without the guarantee of being rehired in the future. This Court agrees Section 413 of the

Act, 77 P.S. § 772, provides in relevant part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, *suspend,* or terminate a notice of compensation payable ... upon petition filed by either party with the department, *upon proof that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased,* or that the status of the dependent has changed ... And provided further that where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it is shown that the loss in earnings does not result from the disability due to the injury.*

(Emphasis added.)

In *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993), the Supreme Court of Pennsylvania interpreted that Section 413 of the Act, 77 P.S. § 772, allows an employer to suspend workers' compensation benefits when an employee quits voluntarily because the "employee's loss of earnings was not caused by her injury, but by her voluntary decision to abandon employment." *Inglis House,* 634 A.2d at 595.

■ Here, Claimant had a contract with Pitt from August 2006, through April 2007. Her employment would have ended in April 2007, had she not resigned as of December 31, 2006. Claimant did not sign a new contract for the following year, and

2. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation),* 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

her future employment at Pitt was nonexistent. Claimant argues that her position at Pitt would have been available to her in the fall but-for her work injury, however there is no evidence to support this assertion. Claimant's return to work was at Pitt's discretion. Claimant's decision to resign from her employment with Pitt to pursue a Master's Degree had no relationship to her work injury.

In *North Pittsburgh Drywall Company, Inc. v. Workers' Compensation Appeal Board (Owen)*, 59 A.3d 30 (Pa.Cmwlth. 2013), this Court addressed the issue concerning whether a claimant's loss of earnings was related to a work injury or non-work related. In *Owen*, Jason Owen (Mr. Owen), a drywall installer, sustained a disabling work-related injury which North Pittsburgh Drywall Co., Inc. (NPDC) accepted pursuant to a Notice of Compensation Payable (NCP). *Owen*, 59 A.3d at 34. After Mr. Owen sustained a work injury, his vehicle was repossessed and Mr. Owen did not have funds available to retrieve his vehicle from the lienholder. Subsequently, Mr. Owen was released to light-duty work and NPDC offered Mr. Owen a light-duty position. Mr. Owen borrowed his father's vehicle and returned to work at the light-duty position. After a few days, Mr. Owen's father could no longer lend him his vehicle. Without transportation, Mr. Owen was unable to continue working. *Owen*, 59 A.3d at 34. NPDC filed a Suspension Petition. Mr. Owen argued that the cases relied upon by NPDC were distinguishable based on procedural differences dictated by whether a Reinstatement Petition or a Suspension Petition was at issue. *Owen*, 59 A.3d at 37.

This Court noted that the analysis of these cases, regardless of whether they arise in the context of a Reinstatement or Suspension Petition, required this Court to examine the reasons why Mr. Owen left his position and a determination of whether Mr. Owen's loss of earnings was related to his work injury or non-work-related factors:

> Claimant [Mr. Owen] and Employer [NPDC] argue that these cases are distinguishable based either on their procedural posture and the corresponding relevant burdens of proof (suspension versus reinstatement) or the factual bases of the claimants' separation from their modified-duty positions (voluntary versus involuntary). While these distinctions are accurate, these cases, along with several others, nevertheless are instructive on how to resolve the present matter.... In [*Campbell v. Workers' Compensation Appeal Board (Foamex)*, 707 A.2d 1188 (Pa.Cmwlth.1998)] and [*Beattie v. Workers' Compensation Appeal Board (Liberty Mutual Insurance Co.)*, 713 A.2d 187 (Pa.Cmwlth.1998)], reinstatement cases, the claimants involuntarily left their modified duty positions and, in considering whether reinstatement of the benefits was proper under Section 413 of the Act, this Court again examined the reasons behind the claimants' leaving their positions. In doing so, we held that the personal reasons given by the claimants in Campbell and Beattie to leave their employment, i.e., loss of transportation and stress caused by interpersonal problems, respectively, were not related to the claimants' work injuries, and therefore, were legally insufficient to support the reinstatement of benefits.

*Owen*, 59 A.3d at 39.

Decisively, this Court determined that benefits should be reinstated if separation was proven to be related to claimant's work injury, but not reinstated if the separation was related to claimant's bad faith conduct or voluntarily quitting.

Claimant notified Pitt on August 2, 2006, that she voluntarily resigned from her position at Pitt effective December 31, 2006, before her work-related injury at UPMC on November 24, 2006. Following the holding in *Owen,* Claimant's personal reasons for leaving her position were unrelated to her injury and therefore legally insufficient to include wages from Pitt in her AWW for UPMC benefits. The Board properly reduced Claimant's AWW to include UPMC and Mon Valley, and not Pitt, as of the date of her resignation.

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 15th day of December, 2014, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.