William J. Kunigonis and the Workmen's Compensation Appeal Board *v.* H. P. Foley, Inc. and Liberty Mutual Insurance Co. Liberty Mutual Insurance Co. and H. P. Foley, Inc., Appellants.

William J. Kunigonis *v.* H. P. Foley, Inc., Liberty Mutual Insurance Company and Workmen's Compensation Appeal Board. William J. Kunigonis, Appellant.

Argued October 8, 1976, before President Judge Bowman and Judges Crumlish, Jr. and Wilkinson, Jr., sitting as a panel of three.

*Lowell A. Reed, Jr.*, with him *Peter J. Weber*, and *Rawle & Henderson*, for H. P. Foley Co., Inc. and Liberty Mutual Insurance Co.

*Gerald J. Haas*, for Kunigonis.

*James N. Diefenderfer*, for Board.

Opinion by Judge Crumlish, Jr., January 4, 1977:
Presently before us are the cross appeals of William J. Kunigonis (Claimant), his employer, H. P. Foley, Inc. (Employer), and its carrier, Liberty Mutual Insurance Company, from the decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision ordering compensation for a thirteen-month period excepting and suspending approximately one and one-half months thereof, and thereafter suspending compensation entirely.

Employer was further ordered to pay the sum of $3,-125.55 in medical expenses.

Claimant was awarded benefits for total disability resulting from a heart attack induced by his work as an electrician. He worked for Employer as a journeyman electrician during the erection of the Penn Walt Building in Philadelphia. On April 8, 1970, construction work on this building had progressed to the twenty-second floor. Claimant's job at this point consisted of installation of the electrical system for the twenty-second floor. An elevator had been installed for the workmen's use up to the twentieth floor. During the job, he had worked in conjunction with another electrician sharing the workload on a regular basis, which included the transportation of equipment and material from one floor to another.

On April 8, 1970, although Claimant's co-worker was late in arriving at the job site, Claimant proceeded with his work duties. He rode the elevator to the twentieth floor and then walked to the twenty-second floor where he was currently working. After determining what equipment was needed, he walked down to the eighteenth floor where he obtained some thin-wall conduit which he carried back up to the twenty-second floor. He then walked down to the twenty-first floor where he got an electrical hammer (weighing about twenty-five pounds) and a "hickey" (an instrument used in the bending of thin-wall conduits in order that they fit into the appropriate places). Claimant carried this hammer and hickey up to the twenty-second floor and then walked back down to the twenty-first floor for some small equipment such as nuts and bolts (weighing approximately 10 pounds). Next, he carried the items back up to the twenty-second floor and started his work project by climbing up a sixteen-foot step ladder in order to take necessary measurements, after which he then climbed

down the ladder and, while bending some thin-wall conduit on the "hickey" instrument, the hickey slipped causing Claimant to lose his balance and fall backwards onto his haunches. He then felt severe chest pains.

Claimant stayed on the twenty-second floor in severe pain for about five to ten minutes during which he experienced a shortness of breath. Finally, he walked down to the twenty-first floor where he remained seated for about one and one-half hours, still suffering from chest discomfort. His co-worker then arrived on the job and went to the twenty-second floor to start his own work. After this one and one-half hour period, Claimant returned to the twenty-second floor where he remained, without actually working, until 4:00 P.M., the end of the work day.

At the end of that day, Claimant was driven home in a car pool. Although still experiencing chest discomfort, he did not reveal this to his family. The next morning Claimant arose to go to work, had breakfast, and as he started to put on his shirt at 7:00 A.M., the severe chest pain from shoulder to shoulder, which he experienced the day before, returned. At this point, his daughter drove him to the hospital where he was admitted. He remained there for one month under the care of the doctor who testified on his behalf concerning his disability. Under doctor's orders, after his hospital stay, he remained home for months before he returned to work on April 5, 1971.

Claimant worked for Employer until May 21, 1971, at no loss of pay until he was told that there was no more light work available for him. Claimant did not find another job until July 9, 1971, when he started work for another employer at a higher rate of pay until he left that job on January 5, 1972.

The referee awarded compensation to Claimant for total disability from June 9, 1970, up to and in-

cluding July 8, 1971, except for the period April 5, 1971 to May 21, 1971, when Claimant worked for Employer. The referee found that Claimant suffered from an undetermined partial disability starting July 9, 1971 (the day on which he started work for another employer) but has suspended payment of any compensation from January 5, 1972.

In Claimant's appeal to the Board, as here, objection was made to the referee's finding of fact that he voluntarily left employment on January 5, 1972, after recuperation from his heart attack, while in the employ of an employer other than Employer herein, and assertions were made that the referee should have made a finding as to whether light work was available to Claimant following January 5, 1972.

Employer's appeal is based on the assertion that there was no unusual exertion and accident whatsoever inducing the April 8, 1970 heart attack.

For reasons hereinafter stated, we must affirm the Board and dismiss both appeals before us.

EMPLOYER'S APPEAL
No. 1696 C.D. 1975

Since the accident in question occurred on April 8, 1970, the 1972 Amendments to The Pennsylvania Workmen's Compensation Act [1] (Act) are not here relevant. Rather, we are once more confronted with a determination of whether a compensable "accident" has occurred, and as we have stated on numerous prior occasions, one category of accident under the Act is carved out by the unusual strain doctrine. See *Hamilton v. Procone, Inc.*, 434 Pa. 90, 252 A.2d 601 (1969); *Workmen's Compensation Appeal Board v. United Sheet Metal Company*, 18 Pa. Commonwealth

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

Ct. 535, 336 A.2d 896 (1975). We have defined this doctrine by saying:

> Under this doctrine there can be no recovery unless the claimant proves that the death or injury resulted from an overexertion or unusual strain encountered in the course of his employment . . . [and] the unusual strain doctrine is to be applied according to the work history of the individual involved and not according to the work pattern of his profession in general.

*Workmen's Compensation Appeal Board v. United Sheet Metal Company*, 18 Pa. Commonwealth Ct. at 537-8, 336 A.2d at 897-8.

Findings of fact nos. 3, 4, 5 and 8, based on Claimant's testimony, specifically relate the unusual work activities undertaken on the day of the accident, and without specifically enumerating them, detail the events previously recited in the facts of this opinion. Employer, on the other hand, cites us to much testimony tending to support the fact that the events in question on the day of the accident are far from unusual and possibly not the cause of the heart attack.

We have carefully read this record and agree that there is evidence controverting Claimant's position, and testimony which would support the findings of fact, but the reality of the situation is that the referee chose to believe the testimony of Claimant which our review reveals is supportive of the findings of fact. In these circumstances, we must conclude that substantial evidence is of record and the referee did not err in concluding that the findings of fact as stated support a conclusion of law of accident, *i.e.*, unusual strain.

Employer also challenges the Board's characterization of the "accident" which did occur.

The Board stated that the hickey with which Claimant was working slipped, causing him to lose his bal-

ance and fall backward and this was characterized as "an untoward and unexpected event in his work." Employer states that this specific finding of accident is not supported by competent evidence and points to Claimant's own testimony that this slipping *was not unusual.*

Admittedly, the slipping of the hickey was not unusual, but nowhere in the evidence is there any admission or testimony that Claimant in the past ever lost his balance and fell backwards on his haunches as the hickey slipped. Thus, it is conceivable that the Board could find an "accident" in the traditional definition of the term "occurred." However, the Board had no authority to make the additional finding of an accident in this sense when the referee had concluded that an accident had occurred under the unusual strain doctrine. The decision in *Forbes Pavillion Nursing Home, Inc. v. Workmen's Compensation Appeal Board*, 18 Pa. Comomnwealth Ct. 352, 336 A.2d 440 (1975), prevents the Board from making a finding unless the referee had committed an error of law or had made a finding without competent evidence. In the instant case, the referee did make a proper finding of accident under the unusual exertion doctrine and on that basis the Board may have been precluded from introducing a new finding.

Notwithstanding the fact that the Board may have erred in making a finding with respect to a conventional accident, it constitutes harmless error once it is established that the referee's finding of an accident based on unusual strain was bottomed on substantial evidence.

CLAIMANT'S APPEAL
No. 1718 C.D. 1976

Claimant presses the argument that finding of fact no. 13, standing alone, is insufficient to justify *sus-*

*pension* of benefits after January 5, 1972, and that a *reinstatement* should have been ordered. That finding states:

"13. Claimant did not work again until July 9, 1971 when he obtained employment as an electrician with J. F. Langan, Inc. His duties at Langan included climbing seven (7) flights of stairs and installing and wiring electrical equipment in a building then under construction. Claimant performed these duties continuously and successfully until January 5, 1972, *when he left voluntarily.*" (Emphasis added.)

Claimant suggests that it was essential for the referee to find that Claimant left his employ with J. F. Langan Company on that date because of the disability caused by the April 8, 1970 accident or that his leaving was not as a result of that accident. To this end, Claimant argues that failure to make this finding was error and the Board therefore misconceived its scope of review necessitating a remand.

The referee's suspension in this matter was apparently based upon Sections 306(b), 77 P.S. §512, and 413(a), 77 P.S. §773, for once compensation has been suspended pursuant to Section 306(b), it can only be reinstated as provided by Section 413(a).

In *Possumato v. MidVale-Heppenstall Company*, 4 Pa. Commonwealth Ct. 664, 667-8, 287 A.2d 915, 916-17 (1972), we stated:

Judge SPAETH's two able opinions in this protracted litigation, in addition to reviewing the evidence, discussed in detail who has, or should have, the burden of proving whether or not claimant's leaving his employment was the result of the injury. The Act itself is not clear: 'And provided further, that where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the accident that payments

under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.' Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, Art. IV, Section 413, as amended, 77 P.S. §772. Judge SPAETH concluded that since the Act did not specifically place the burden on either litigant, he would treat it as though it were an issue of modifying the agreement and, therefore, the burden would be on the employer. We disagree. The change here involved is a change from being employed to voluntarily leaving employment and claiming disability, not a change in the agreement.

Justice EAGEN, speaking for the majority in Barrett v. Otis Elevator Company, 431 Pa. 446, 246 A.2d 668 (1968), discusses the question of placing the burden in this type of situation. In that case, the issue was who had the burden to prove that light work was available. The court concluded that the employer had the burden, for it was the employer who asserted the fact and it was easier to prove a positive than a negative: 'The burden of proof may be placed on the party who must prove the existence of a fact rather than on the party who must prove its nonexistence.' 431 Pa. at 455, 246 A.2d at 673.

Under the clear and scholarly reasoning in Barrett, it must follow that claimant had the burden of proving that he left his employment by reason of the injury. See Henderson v. Air Master Corp., 2 Pa. Commonwealth Ct. 275, 276 A.2d 581 (1971). This having been determined, the scope of review of the lower court

is very limited and, on this record, there is no basis for holding that the Board capriciously disregarded competent evidence. In addition to Barrett, the law on the scope of review is set forth in Pudlosky v. Follmer Trucking Company, et al., 206 Pa. Superior Ct. 450, 214 A.2d 270 (1965).

It is clear that under the mandate of *Possumato*, Claimant had the burden of proving he left work due to the disability. Finding of fact no. 13 explicitly finds that he left work voluntarily, but does not detail the reason for voluntarily leaving. Most certainly, the finding could have expanded the reason for the voluntary leaving, but the short of it is that the referee, having testimony of record tending to establish that the leaving was caused by disability, resolved the credibility determination to the effect that the leaving was voluntary, *i.e.*, non-disability related. That the finding could have been more artfully drawn to direct its emphasis to a non-disability related cause for leaving is most evident; however, we think it clear that at very least this finding does resolve the question of fact posed by *Possumato* in favor of Employer, and implicitly holds that Claimant failed to shoulder the disability burden.

Accordingly, we

ORDER

AND Now, this 4th day of January, 1977, the orders of the Workmen's Compensation Appeal Board in No. 1696 C.D. 1975 and No. 1718 C.D. 1975 are hereby affirmed.