# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard Robinson, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2527 C.D. 2015 |
| | : | Submitted: November 4, 2016 |
| Workers' Compensation Appeal | : | |
| Board (Holloman Corporation), | : | |
| | : | |
| Respondent | : | |
| | | |
| Holloman Corporation, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2540 C.D. 2015 |
| | : | Submitted: November 4, 2016 |
| Workers' Compensation Appeal | : | |
| Board (Robinson), | : | |
| | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED:  January 13, 2017**

These consolidated matters are cross-petitions for review filed by Richard Robinson (Claimant) and Holloman Corporation (Employer) appealing an order of the Workers' Compensation Appeal Board (Board) that modified and affirmed a decision and order of a Workers' Compensation Judge (WCJ) that

granted both Claimant's review petition and Employer's petition to modify or suspend compensation benefits. For the reasons set forth below, we affirm.

Claimant, a Florida resident, was hired by Employer on June 9, 2011, to work as a skilled laborer on gas pipeline construction in Pennsylvania at a rate of pay of $16.00 per hour plus an $85 per diem for each workday. (WCJ Decision Findings of Fact (F.F.) ¶¶4b, 4f, 5b, 11, 12.) On June 18, 2011, less than 10 days after he started work, Claimant injured his left knee when he slipped and fell while working for Employer. (WCJ Decision F.F. ¶1.) Claimant returned to light duty work at no earnings loss after this accident and Employer issued a medical-only Notice of Compensation Payable (NCP) describing the work injury as a left knee sprain. (WCJ Ex. 1, NCP; Employer Ex. B, Brannon Dep. at 10, Reproduced Record (R.R.) at 138a; Employer Ex. E, Pay Records, R.R. at 163a-165a.)

On August 31, 2011, Claimant stopped working and returned to his family in Florida. (WCJ Decision F.F. ¶¶5f, 12; 8/6/12 Hearing Transcript (H.T.) at 22-26, R.R. at 31a-35a.) On November 2, 2011, Employer issued a Notice of Temporary Compensation Payable (NTCP) that described Claimant's work injury as a left knee meniscus tear. (WCJ Decision F.F. ¶1; WCJ Ex. 1, NTCP, R.R. at 1a.) Under this NTCP, which later converted to an NCP by operation of law, Employer paid Claimant total disability benefits under the Workers' Compensation Act[1] based on an average weekly wage of $1,225.00. (WCJ Decision F.F. ¶1; WCJ Ex. 1, NTCP, R.R. at 1a.)

On March 5, 2012, Claimant's physician released him to return to full-time work with restrictions. (WCJ Decision F.F. ¶7; Joint Ex. 1, Stipulation,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

R.R. at 179a.) On March 21, 2012, Employer sent Claimant a letter offering him a full-time, 10-hour per day, five-day a week position within those medical restrictions at Claimant's pre-injury hourly rate of pay and asking him to report to work on April 1, 2012. (WCJ Decision F.F. ¶¶5g, 12, 16; 3/21/12 Letter, attached as exhibit to Employer Ex. B.) Claimant did not return to work in response to this offer and on May 8, 2012, Employer filed a petition to modify or suspend Claimant's disability benefits on the ground that Claimant was offered and refused a job within his work restrictions. (WCJ Decision F.F. ¶¶2, 5g, 12.)

On May 10, 2012, following communication with Claimant's counsel, Employer sent Claimant another letter again offering him this full-time, light-duty position, making clear that Claimant would be paid his pre-injury rate of pay of $16.00 per hour plus an $85.00 per diem for each workday. (WCJ Decision F.F. ¶¶5h, 12; 5/10/12 Letter, attached as exhibit to Employer Ex. B.) Claimant accepted this position and returned to work on June 18, 2012, and Employer filed a notification of suspension, pursuant to Section 413(c) of the Act[2] suspending Claimant's benefits effective June 18, 2012 on the ground that he had returned to work on that date with no loss of earnings. (WCJ Decision F.F. ¶¶3, 4g, 5h, 11, 12; Notification of Suspension, R.R. at 8a.) Claimant filed a challenge to the suspension, which he amended to a review petition seeking a correction in the amount of his average weekly wage. (WCJ Decision F.F. ¶ 3.)

The WCJ held evidentiary hearings on August 6, 2012 and September 24, 2012, at which Claimant testified, and also received deposition testimony of Employer's safety manager and office manager and a stipulation of the parties concerning the testimony of Claimant's treating physician. Claimant and

---

[2] Added by the Act of July 1, 1978, P.L. 692, *as amended*, 77 P.S. § 774.2.

Employer's witnesses testified and Employer's pay records showed that Claimant worked approximately 10 hours per day, six days a week in 2011 before and after the injury, that Claimant worked 10 hours per day, five days a week after he returned to work in June 2012, and that in both years Claimant was paid time and one-half for hours over 40 hours per week. (8/6/12 H.T. at 11, 13, 33, R.R. at 20a, 22a, 42a; Employer Ex. B, Brannon Dep. at 9-10, 23-24, R.R. at 137a-138a, 151a-152a; Employer Ex. A, Rosenberg Dep. at 18, R.R. at 122a; Employer Ex. E, Pay Records, R.R. at 163a-167a.) Claimant testified that it was his understanding when he was hired that he would be working 10 or more hours a day, six days a week. (8/6/12 H.T. at 10-11, R.R. at 19a-20a.) Employer's witnesses testified that when Claimant was hired he was not guaranteed a specific number of hours and that the number of hours that a skilled laborer works varies with the needs of the project on which he is working. (Employer Ex. B, Brannon Dep. at 9, R.R. at 137a; Employer Ex. A, Rosenberg Dep. at 10, 12-15, R.R. at 114a, 116a-119a.) Claimant admitted that he is fully capable of performing the light duty job to which he returned in June 2012. (8/6/12 H.T. at 13, 31-32, R.R. at 22a, 40a-41a.)

On August 24, 2012, after the hearings before the WCJ had begun, Claimant left work and returned to Florida because his mother was seriously ill. (WCJ Decision F.F. ¶¶4n, 11; 9/24/12 H.T. at 10-12, 18-21, 32, R.R. at 61a-63a, 69a-72a, 83a; Employer Ex. D, Claimant 2012 Work Schedule, R.R. at 162a.) Claimant did not return to work and decided that he would not return to work for Employer in Pennsylvania, even after his mother's health improved. (WCJ Decision F.F. ¶¶4o, 5i, 11, 12; 9/24/12 H.T. at 32-36, 41-43, R.R. at 83a-87a, 92a-94a; Employer Ex. B, Brannon Dep. at 17-18, R.R. at 145a-146a.) In Florida, Claimant worked for the lawn care business that he and his wife had started, but

4

did not draw a paycheck for that work because "[t]hat's what you do when you try to build a company." (9/24/12 H.T. at 13-14, 37, 41-42, R.R. at 64a-65a, 88a, 92a-93a.) At the hearing before the WCJ on September 24, 2012, Claimant testified that he did not want to come back to Pennsylvania and had no intention of returning to his job with Employer. (*Id.* at 42, R.R. at 93a.) On September 26, 2012, Employer terminated Claimant's employment for failure to return to work and communicate with Employer on when he would return. (Employer Ex. F, Termination Letter, R.R. at 168a; Employer Ex. B, Brannon Dep. at 17-20, R.R. at 145a-148a.)

On August 25, 2014, the WCJ issued a decision amending Claimant's average weekly wage to $1,630.00, reducing Claimant's benefits from April 1, 2012 on to partial disability benefits of $216.67 per week, and suspending Claimant's benefits as of September 26, 2012. (WCJ Decision Conclusions of Law (C.L.) ¶¶1-3 & Order.) The WCJ found Employer's witnesses credible and found Claimant credible except for his testimony that Employer's March 2012 job offer was not within his work restrictions. (*Id.* F.F. ¶¶11-12.) Based on Claimant's testimony and the evidence of the actual hours that Claimant worked in 2011, the WCJ found that Claimant was expected to work a six-day, 60-hour week at the time of his injury. (*Id.* F.F. ¶¶13-14.) The WCJ found that because Claimant's hourly wage was $16.00, with time and one-half for hours above 40 hours per week plus six $85.00 per diems, Claimant's average weekly wage was $1,630.00 and his total disability benefit was $858.00 per week. (*Id.* F.F. ¶15, C.L. ¶1 & Order.) The WCJ found that Employer had offered Claimant work within his medical limitations as of April 1, 2012 at the same hourly wage and per diem rate and that Claimant had failed to follow through in good faith on that job offer. (*Id.*

F.F. ¶¶16-17.) The WCJ concluded, however, that because the job offered by Employer as of April 1, 2012 and to which Claimant returned on June 18, 2012 was for 50 hours per week with a five-day work week, Claimant's earning power in that position was $1,305.00 per week, and held that Employer was entitled only to a modification of Claimant's benefits to a partial disability rate of $216.67 per week as of April 1, 2012, based on the earnings difference between Claimant's pre-injury job and the 2012 position. (*Id.* F.F. ¶¶15-16, C.L. ¶¶1-2 & Order.) The WCJ also found that Claimant abandoned his employment and that Employer discharged him for good cause and held that Employer was therefore entitled to a suspension of benefits as of September 26, 2012 because Claimant's loss of earnings after the termination of his employment was not due to his work injury. (*Id.* F.F. ¶18, C.L. ¶3 & Order.)

Both Employer and Claimant timely appealed the WCJ's decision to the Board. On November 6, 2015, the Board issued a decision that modified the date of suspension of Claimant's benefits, but otherwise affirmed the WCJ's decision. The Board concluded that the WCJ's determination that Claimant's average weekly wage was $1,630.00 was supported by substantial evidence. (Board Op. at 3-5.) The Board also affirmed the WCJ's ruling that Employer was entitled to a suspension because Claimant's employment ended for reasons unrelated to his injury. (*Id.* at 5-8.) The Board, however, held that the date when Claimant's loss of earnings was no longer related to his injury was the date that he left his job for personal reasons, rather than the date his employment was

6

terminated, and, accordingly modified the WCJ's order to suspend Claimant's benefits as of August 24, 2012. (*Id.*) These appeals followed.[3]

Claimant argues that his leaving of his modified duty job cannot constitute grounds for the suspension of his partial disability benefits because his reason for leaving did not involve culpable conduct and because he had not returned to full-duty work at his pre-injury earnings. We do not agree.

Where a suspension of benefits is based on the termination of the claimant's employment, the issue is not whether the claimant's conduct is blameworthy or reasonable, but whether his loss of earnings is due to factors other than his work injury. *Hertz-Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 684 A.2d 547, 549 (Pa. 1996); *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 658 A.2d 766, 769-70 (Pa. 1995); *North Pittsburgh Drywall Co. v. Workers' Compensation Appeal Board (Owen)*, 59 A.3d 30, 39-41 (Pa. Cmwlth. 2013).

> It is well-settled that the legislative intent behind the Act is simply to provide compensation to employees who suffer work-related injuries. It is equally well-settled that the Act was not intended as a remedy where a claimant's "loss [in earnings] is due to factors other than such injury." Unlike the Pennsylvania Unemployment Compensation Act [Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751-918.10], the Act here contains no language whatsoever indicating that a showing of fault on the part of a claimant must be made in order to suspend that claimant's benefits.

---

[3] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *North Pittsburgh Drywall Co. v. Workers' Compensation Appeal Board (Owen)*, 59 A.3d 30, 36 n.8 (Pa. Cmwlth. 2013).

*Hertz-Penske Truck Leasing Co.*, 684 A.2d at 549 (footnote and citations omitted) (quoting *Harle*).

Where a claimant leaves a post-injury job that he is fully capable of performing for personal reasons, his loss of earnings is not related to his injury and he is not entitled to benefits, even where his reasons for quitting work involve no fault, bad faith or culpable conduct. *Hertz-Penske Truck Leasing Co.*, 684 A.2d at 549 (noting that "an employer can suspend worker's compensation benefits when an employee quits voluntarily" because the loss of earnings was caused by the voluntary decision to abandon the employment, not by the injury); *North Pittsburgh Drywall Co.*, 59 A.3d at 41 (fact that claimant's reason for quitting post-injury job was lack of transportation was not grounds for denying suspension of benefits); *Beattie v. Workers' Compensation Appeal Board (Liberty Mutual Insurance Co.)*, 713 A.2d 187, 188-89 (Pa. Cmwlth. 1998) (denying reinstatement of benefits where claimant had obtained a post-injury job with a different employer, but quit that job because of stress unrelated to his injury); *Campbell v. Workers' Compensation Appeal Board (Foamex)*, 707 A.2d 1188, 1191 (Pa. Cmwlth. 1998) (denying reinstatement of benefits where claimant's reason for leaving post-injury job was loss of transportation). If the claimant, rather than the employer, is the one who terminated the employment relationship, the burden is on the claimant to show that he left work due to his disability. *Beattie*, 713 A.2d at 188; *Kunigonis v. H.P. Foley, Inc.*, 367 A.2d 763, 767 (Pa. Cmwlth. 1977). Here, it was Claimant who chose to end his employment with Employer. Although Employer terminated Claimant's employment on September 26, 2012, that termination did not occur until after Claimant acknowledged that he had permanently left his job and would not return.

8

Claimant admitted that he was able to perform his light duty job, and testified that he left work on August 24, 2012 for personal reasons unrelated to his injury or his job. (8/6/12 H.T. at 13, 31-32, R.R. at 22a, 40a-41a; 9/24/12 H.T. at 10-12, 21, 41-42, R.R. at 61a-63a, 72a, 92a-93a.) Moreover, Claimant admitted that he had chosen not to return to work after his personal emergency had ended, not because of his injury, but because he did not like his job and did not want to return to Pennsylvania. (9/24/12 H.T. at 41-42, R.R. at 92a-93a.) Claimant's loss of earnings was therefore due to factors other than his injury, and a suspension of benefits is proper even if there was no misconduct or bad faith by Claimant in his reasons for leaving his job.

The fact that the WCJ found that Claimant was entitled to partial disability benefits does not change this. Claimant is correct that partial disability benefits usually are not suspended where a claimant who is being paid only reduced wages as a result of the injury is discharged or is unable to continue to work for the employer because there is usually still a partial earnings loss caused by the work injury. *See*, *e.g.*, *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649, 658 (Pa. 1999) ("a claimant who has established a partial disability due to a work-related injury should generally continue to receive partial disability benefits by virtue of his loss in earnings capacity, even though subsequently discharged from employment") (emphasis added); *North Pittsburgh Drywall Company, Inc.*, 59 A.3d at 42 (claimant's lack of transportation prevented him from continuing to work for employer); *Howze v. Workmen's Compensation Appeal Board (General Electric Co.)*, 714 A.2d 1140, 1142 (Pa. Cmwlth. 1998) (claimant was discharged by employer). Those cases, however, do not hold that a claimant is automatically

9

entitled to continued benefits where he abandons a full-time post-injury job provided by the employer at his pre-injury rate of pay simply because he no longer wishes to work for the employer or at the employer's location. In all cases, the critical issue is whether the loss of earnings and earning power is due to factors other than the work injury. *Hertz-Penske Truck Leasing Co.*, 684 A.2d at 549; *Harle*, 658 A.2d 769-70. Thus, even where the claimant has not returned to his pre-injury job and pre-injury earnings, partial disability benefits are properly denied where the loss of earnings is due to the claimant's voluntary decision not to work for his employer rather than to the injury. *See Brimmer v. Workers' Compensation Appeal Board (North American Refractories)*, 764 A.2d 104, 105-08 (Pa. Cmwlth. 2000). (claimant who returned to work with a wage loss was not entitled to partial disability benefits for period when he chose to take time off for vacation).

Here, Claimant chose not to return to Pennsylvania to work for Employer, even when there was nothing that made him unable to return to work, and he stayed in Florida and worked instead on his family's start-up lawn care company. (9/24/12 H.T. at 37, 41-42, R.R. at 88a, 92a-93a.) Moreover, although Claimant had a wage loss while he worked for Employer in 2012, that was not due to a limitation on the hours that he was capable of working or a lesser rate of pay; the position that Claimant chose to abandon was a more than full-time position at his pre-injury rate of pay. (WCJ Decision F.F. ¶16; 8/6/12 H.T. at 13-14, R.R. at 22a-23a.) Rather, the difference in wages was due to the high hours of work available in his pre-injury job with Employer, an earning capacity which required that Claimant be willing to work in Pennsylvania, a condition that Claimant was no longer willing to satisfy. Allowing a claimant to collect partial disability benefits

10

where he is no longer willing to work for an employer that has provided full-time work at his pre-injury rate of pay would not compensate for loss of earning capacity; it would subsidize his voluntary decision to change jobs or not work at all.

Employer, in its cross-appeal, challenges the WCJ's modification of Claimant's average weekly wage and the award of partial disability benefits from April 1, 2012 to August 24, 2012 based on that average weekly wage. Where, as here, a claimant who is paid based on hours worked has worked less than 13 weeks at the time of his injury, the calculation of his average weekly wage is governed by Subsection 309(d.2) of the Act.[4] *Lenzi v. Workers' Compensation Appeal Board (Paving)*, 29 A.3d 891, 894 n.8 (Pa. Cmwlth. 2011); *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1099 (Pa. Cmwlth. 2007). Subsection 309(d.2) provides:

> If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582(d.2). Claimant's hourly wage rate and the number of hours that he was expected to work per week are questions of fact, and the WCJ's findings on those issues must be upheld if supported by substantial evidence. *Lahr Mechanical*, 933 A.2d at 1101-02.

Employer argues that the WCJ's finding that Claimant was expected to work 60 hours per week is not supported by substantial evidence. We disagree. Not only did Claimant testify that he understood that he would be working 10

---

[4] Added by the Act of June 24, 1996, P.L. 350, No. 57, §5, *as amended*, 77 P.S. § 582(d.2).

hours per day, six days a week, but Employer's pay records showed that he in fact worked that schedule both before the accident and in the period after the accident that he worked in 2011. (8/6/12 H.T. at 10-11, R.R. at 19a-20a; Employer Ex. E, Pay Records, R.R. at 163a-165a.) Evidence of the hours that the claimant actually worked per week after assuming his regular job duties is sufficient to support a determination of the hours that the claimant was expected to work. *Lahr Mechanical*, 933 A.2d at 1101-02 (WCJ finding that 58.5 expected hours of work per week was supported by substantial evidence where employer's records showed that claimant worked 58.5 hours in his last week of work before the injury).

The fact that Employer's witnesses testified credibly that there was no "guarantee" that Claimant would work a particular number of hours (Employer Ex. B, Brannon Dep. at 9, R.R. at 137a; Employer Ex. A, Rosenberg Dep. at 10, 12-15, R.R. at 114a, 116a-119a) does not conflict with the WCJ's finding that it was expected that Claimant would work a six-day, 60-hour work week. The absence of a guarantee of a particular amount of work does not preclude the conclusion that the parties had an expectation as to the likely amount of work per week that Claimant would be performing. Although Employer contended that the amount of work could change, there was no evidence that the work week for Claimant's pre-injury job fluctuated from week to week or that the 10 hours per day, six days a week that Claimant worked before his injury was temporary or atypical for his job.

Moreover, the WCJ's calculation of Claimant's average weekly wage would be valid even if no expected number of work hours could be determined. Where the employer's work schedule is too variable to permit a determination of the claimant's expected weekly work hours, average weekly wage is calculated based on the claimant's recent pre-injury earning experience. *Anderson v.*

12

*Workers' Compensation Appeal Board (F.O. Transport)*, 111 A.3d 238, 244-45 (Pa. Cmwlth. 2015) (where hourly rate and expected hours per week required for calculation under Section 309(d.2) do not exist, average weekly wage should be calculated by an alternative method that will "reasonably reflect the economic reality of a claimant's recent pre-injury earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment") (quoting *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 746 A.2d 1108 (Pa. 2000)). The WCJ's calculation of Claimant's average weekly wage based on his hourly wages multiplied by his 60-hour, six day pre-injury work week is therefore the same calculation that would be required if no expected weekly hours could be determined.

For the foregoing reasons, we conclude that the Board did not err in ruling that Claimant's benefits were suspended as of August 24, 2012 and in affirming the WCJ's granting of Claimant's petition to review compensation benefits. We therefore affirm the order of the Board.

_____
JAMES GARDNER COLINS, Senior Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Robinson,                          :
                                           :
                  Petitioner               :
                                           :
          v.                               :    No. 2527 C.D. 2015
                                           :
Workers' Compensation Appeal               :
Board (Holloman Corporation),              :
                                           :
                  Respondent               :

Holloman Corporation,                      :
                                           :
                  Petitioner               :
                                           :
          v.                               :    No. 2540 C.D. 2015
                                           :
Workers' Compensation Appeal               :
Board (Robinson),                          :
                                           :
                  Respondent               :

## O R D E R

AND NOW, this 13th day of January, 2017, the order of the Workers'

Compensation Appeal Board (Board) in the above matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge