**FUTURA AGENCY, INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MARQUEZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 2005.

Decided June 30, 2005.

Jeffrey D. Snyder, Philadelphia, for petitioner.

John D. Pallante, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Futura Agency, Inc. (Employer) petitions for review from a decision of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) which granted the penalty petition and reinstatement petition of Antonio Marquez (Claimant); and further ordered Employer to pay Claimant's costs of litigation and attorney's fees. We affirm.

On June 15, 2001, Claimant suffered a fracture to his left wrist and a torn ACL of

his right knee during the course and scope of his employment with Employer. Claimant's average weekly wage was $320.00, making his compensation payable $288.00. Pursuant to an Agreement for Compensation for Disability or Permanent Injury (Agreement for Compensation) dated June 29, 2001, Employer agreed to pay Claimant a salary in lieu of compensation on and after June 16, 2001. Employer paid Claimant a salary of $200.00 per week in lieu of compensation as per an oral agreement between the parties.

On August 22, 2002, Claimant filed the reinstatement petition seeking reinstatement of total disability benefits as of February 2, 2002 as his injury has caused a decrease in his earning power. Claimant also sought payment of all past due compensation benefits that were never paid by Employer.

On August 23, 2002, Claimant filed a penalty petition alleging that Employer had violated the Pennsylvania Workers' Compensation Act (Act)[1] by mailing Claimant's compensation checks directly to Employer instead of Claimant, by unilaterally stopping Claimant's workers' compensation payments and by failing to pay Claimant the proper workers' compensation rate.

On January 22, 2003, Claimant testified before the WCJ on his own behalf. Claimant stated that he was injured on June 15, 2001, when he fell two stories while working as a manual laborer for Employer. Claimant stated that he had surgery after the work incident and is currently treating with Dr. Lieberman.

Claimant testified that from June 16, 2001 through February 2, 2002 he received $200.00 per week from Employer for workers' compensation. Claimant stated that he returned to light duty work on Febru-

ary 2, 2002 for approximately two weeks. Claimant further stated that he stopped working on March 7, 2002 after he had been requested by his supervisor, Areo Pena, Jr. (Pena), to perform heavy manual labor which he was physically unable to do. Claimant had told Pena that he was unable to perform heavy manual labor and was then advised by Pena that he would not have any further need for Claimant's services. Claimant believed that he had been terminated from his employment.

Claimant stated that during the time he had returned to light duty work he had earned $280.00 per week, forty dollars less than his pre-injury salary of $320.00 per week. Claimant further stated that he has not worked since March 7, 2002.

Employer presented the testimony of Pena, the President of Employer. Pena testified that he entered into a verbal agreement with Claimant that he would pay him $200.00 per week after the work injury and until Claimant was released to return to regular duty work. Pena further stated that after a month he began paying Claimant's indemnity benefits personally in order to avoid an increase in his insurance premiums.

Pena stated that Claimant returned to his pre-injury position on February 4, 2002 and that his last day of work was March 21, 2002. Pena further stated that Claimant was transferred to a different project site on March 20, 2002. Pena stated that he informed Claimant that his co-worker, Mr. Nunez, was no longer interested in driving Claimant to work and that if he was unable to get to work, Employer could not use his services. Pena stated that Claimant was okay with that. Pena further stated that Claimant reported to the new work site one day but did not return thereafter. Pena stated that Claimant's

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1–1041.4; 2501–2626.

average weekly wage was $320.00. Pena admitted that he paid Claimant $200.00 per week after the work injury.

The WCJ found Claimant's testimony credible as to his work injury, the benefits paid to him, that Employer terminated him on March 20, 2002, that he was physically unable to perform his job requirements due to his work injury and that his work injury continued on and after March 21, 2002.

The WCJ further found Claimant's and Pena's testimony credible as to the fact that Pena paid Claimant $200.00 per week in lieu of workers' compensation benefits through February 1, 2002 and that Claimant received $280.00 per week from Employer for work performed from February 2, 2002 through March 20, 2002.

The WCJ found Claimant's testimony more credible and persuasive than Pena where their testimony differed. The WCJ further found that Claimant's average weekly wage is $320.00 per week with a corresponding workers' compensation rate of $288.00 per week.

The WCJ determined that "Claimant was underpaid workers' compensation benefits in the amount of $88.00 per week from June 15, 2001 through February 1, 2002.... This [WCJ] assesses a penalty in the amount of fifty percent (50%) of the workers' compensation benefits due and owing during this time period based on the Employer's blatant violation of Section 407 of the ... Act and the unreasonable and excessive delay of payment of these benefits." WCJ Decision, June 25, 2003, at 6–7.

The WCJ further found that Employer owed Claimant partial disability benefits from February 1, 2002 through March 20, 2002 in the amount of $26.67 per week. The WCJ again awarded penalty in the amount of fifty percent (50%) of the partial disability benefits due and owing to the Claimant based upon Employer's violation of the Act and its excessive and unreasonable delay in paying these benefits.

Finally, the WCJ found that Claimant had shown that there was no longer a job available within his vocational and physical capabilities after March 20, 2002, and reinstated Claimant's total disability benefits as of March 21, 2002, in the amount of $288.00 per week. The WCJ further awarded a penalty in the amount of fifty percent (50%) of the total disability benefits awarded Claimant from March 21, 2002 through the date of the WCJ's decision due to the excessive and unreasonable delay in reinstating these benefits to Claimant and Employer's failure to reinstate Claimant's benefits despite entering into the Agreement for Compensation. The WCJ found that Employer presented a reasonable basis for the contest. Employer appealed to the Board.

The Board found that the WCJ did not err and affirmed the WCJ's decision. Employer now petitions our Court for review.[2]

Employer contends that the Board erred in determining that Claimant's testimony constituted substantially competent evidence in support of the reinstatement petition, erred in reinstating benefits where there was no operative document recognizing a compensable work injury, and abused its discretion in imposing a 50% penalty where there is no violation of law, rule or regulation in this case.

**2.** Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights have been violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

First, we must address whether there was a document that recognized a compensable work injury. Employer contends that the WCJ found the Agreement for Compensation null and void, as it was an illegal agreement. We disagree. The WCJ found that the oral agreement between the parties was illegal, not the written Agreement for Compensation. The oral agreement that Employer would pay Claimant a reduced rate of compensation was in violation of the Act. Section 407 of the Act states in pertinent part as follows:

> [T]he employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; but any agreement made prior to the seventh day after the injury shall have occurred, or permitting a commutation of payments contrary to the provisions of this act, or varying the amount payable as provided in this act, shall be wholly null and void....

77 P.S. § 731. Employer admitted paying claimant reduced wages in lieu of compensation for a work injury. Employer also admitted that it paid the $200.00 as per an oral agreement between the parties. The Board was correct in determining that the Agreement for Compensation was not null and void, as it did not contain any provisions for a reduced payment of compensation. Further, we agree with the Board that the Agreement for Compensation was an operative document that recognized a compensable work injury.

Next, we must address Employer's argument that the WCJ erred in finding that there was substantial evidence to support the reinstatement of Claimant's benefits.

Section 413 of the Workers' Compensation Act authorizes, among other things, reinstatement, or suspension of benefits and provides in pertinent part as follows:

> [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772.

In the present controversy, Claimant received payments in lieu of compensation after the execution of the Agreement for Compensation between the parties. Claimant returned to light-duty work with Employer and remained with Employer until Claimant was notified by Employer that there was no longer any light-duty work available. We note that Claimant's benefits were never formally suspended however Employer stopped paying Claimant benefits when he returned to work.

When seeking a reinstatement of benefits, causation will be presumed if the claimant can demonstrate that: (1) through no fault of his own, his earning power is once again adversely affected by his disability; and (2) the disability which gave rise to his original claim, in fact, continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994).

Claimant testified on his own behalf that Employer eliminated his light-duty position, leaving him unemployed and further that his disability continues. The WCJ found the Claimant credible. Credibility determinations are solely within the WCJ's discretion, and if the facts as found by the WCJ rest on competent evidence, we may not disturb them. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board*, 9 Pa. Cmwlth. 176, 305 A.2d 757 (1973). Claim-

ant was released from his light-duty employment due to Employer no longer having a light-duty position available and Claimant's disability continued. Therefore, causation is presumed and there was no need for expert medical testimony in the present controversy. The testimony of the Claimant alone is sufficient evidence to support the reinstatement of his suspended benefits. *Latta.* A review of the record reveals that the WCJ's decision was supported by substantial competent evidence.

■ Finally, we must address Employer's contention that the WCJ abused its discretion in imposing a 50% penalty where Employer did not violate the law, a rule, or any regulations. Section 435(d) of the Act gives the WCJ the power to impose penalties of up to 50% for violations of the Act. 77. P.S. § 991(d). Initially, the Claimant bears the burden of establishing a violation of the Act. Once a violation is established, then the burden shifts to the Employer to show that no violation occurred. *Shuster v. Workers' Compensation Appeal Board (Pa. Human Relations Comm.),* 745 A.2d 1282 (Pa.Cmwlth.2000), *appeal denied,* 566 Pa. 654, 781 A.2d 151 (2001). The WCJ found that the Agreement for Compensation did not contain a provision whereby the Claimant agreed to accept $200.00 per week as his compensation rate. The WCJ found, based upon Employer's testimony, that the agreement for $200.00 was a separate, illegal, oral agreement. The WCJ further found in pertinent part as follows:

> Section 407 of the Workers' Compensation Act specifically precludes an Agreement for compensation which varies the amount to be paid or the period during which compensation shall be payable as provided in the Workers' Compensation Act. Therefore, it would have been unlawful for the Employer to enter into an Agreement with the Claimant which would have reduced the Claimant's compensation benefit rate from $288.00 per week to $200.00 per week. Despite the foregoing, the Employer chose to pay the Claimant $200.00 per week as payments made in lieu of workers' compensation benefits as more fully detailed herein.
>
> · . . .
>
> 6.g. Mr. Pena entered into a verbal agreement with the Claimant that he was going to pay him $200.00 per week after the work incident until the Claimant was released to return to regular work duties.
>
> · · ·
>
> 8.c. To the extent that their testimony differs, this [WCJ] finds the testimony of the Claimant to be m[or]e credible and persuasive than the testimony of Mr. Pena, particularly since Mr. Pena admittedly entered into an illegal agreement with the Claimant. . . .

WCJ Decision, Findings of Fact Nos. 2, 6.g, and 8.c., at 2, 4, and 6. The WCJ concluded that the Employer violated the Act when he entered into the illegal verbal agreement with Claimant to pay reduced benefits in the amount of $200.00 per week. The WCJ further found that the Employer again violated the Act when Employer failed to reinstate Claimant's benefits on March 21, 2001, as there was an " 'open' Agreement for Compensation." WCJ Decision, Conclusions of Law No. 3, at 8.

■ Once the WCJ found a violation of the Act, the imposition of penalties was at the WCJ's discretion and will not be overturned absent a finding of an abuse of discretion. *Lakomy v. Workers' Compensation Appeal Board (Dept. of Environmental Resources),* 720 A.2d 492 (Pa. Cmwlth.1998). The Employer's modification and cessation of Claimant's benefits

without prior authority triggers the penalty provisions of Section 435 of the Act. *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285 (Pa.Cmwlth.2002), *appeal* denied, 573 Pa. 717, 828 A.2d 351 (2003). The WCJ found that Employer violated the Act and such finding is supported by substantial competent evidence. Therefore, the Board did not err in affirming the WCJ's decision to impose a 50% penalty upon Employer for violating the Act.

Accordingly, we must affirm the decision of the Board.

### *O R D E R*

AND NOW, this 30th day of June, 2005 the order of the Workers' Compensation Appeal Board in the above captioned matter is affirmed.