# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Derry Township Supervisors and Selective Insurance Company of America, | : : : |
| Petitioners | : |
| | : |
| v. | : No. 751 C.D. 2016 |
| | : Submitted: December 30, 2016 |
| Workers' Compensation Appeal Board (Reed), | : : |
| Respondent | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: January 30, 2017

Derry Township Supervisors (Employer) and Selective Insurance Company of America (Insurer) petition for review of the Workers' Compensation Appeal Board's (Board) order affirming the Workers' Compensation Judge's (WCJ's) decision granting Kenneth Reed's (Claimant) penalty petitions and the award of counsel fees for failing to promptly pay for work-related medical treatment.

Employer did not pay for the work-related medical treatment not because it was unnecessary, but because Physical Therapy Institute (PTI) was not the provider of the billed services but another entity, THE pt GROUP (pt Group), was.

The dispute centers on whether the contractual arrangement and billing practice of the two providers are lawful under the Workers' Compensation Act (Act).[1]

## I.

Effective January 1, 1995, cost containment amendments to the Act made to reduce the cost of workers' compensation insurance to employers became effective. One of the most important was Section 306(3)(iii), 77 P.S. § 531(3)(iii), which changed the method by which workers' compensation medical bills' reimbursement were to be calculated. The provision changed the charges from a cost-plus basis to one calculated on Medicare's fee schedule, which is normally a lower amount. It provides:

> [A] provider shall not require, request or accept payment for the treatment, accommodations, products or services in excess of one hundred thirteen per centum of the prevailing charge at the seventy-fifth percentile; one hundred thirteen per centum of the applicable fee schedule, the recommended fee or the inflation index charge; one hundred thirteen per centum of the DRG [diagnosis-related group] payment plus pass-through costs and applicable cost or day outliers; or one hundred thirteen per centum of any other Medicare reimbursement mechanism, as determined by the Medicare carrier or intermediary, whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services rendered. If the commissioner determines that an allowance for a particular provider group or service under the Medicare program is not reasonable, it may adopt, by regulation, a new allowance. If the prevailing charge, fee schedule, recommended fee, inflation index charge, DRG payment or

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

77 P.S. § 531(3)(iii).

We are unable to find any exception to this provision requiring billing based on the Medicare fee schedule but, apparently, such an exception exists because the parties assume that if a provider was in existence on January 1, 1995, when the cost containment provisions were enacted, that provider is grandfathered and still allowed to bill on a cost-plus formula. In this case, if the pt Group is the provider, because it was apparently not in existence in 1995, the billed services would be billed at 113 percent of the Medicare fee schedule. However, if PTI is the provider, because it apparently was in existence in 1995, the services can be billed using the cost-plus method. Now to the facts of this case.

## II.

On March 5, 2010, Claimant sustained work-related injuries resulting from a motor vehicle collision recognized by Employer as a cervical sprain and back sprain. [2] As a result of those injuries, Claimant received physical therapy services at a

---

[2] Employer issued a Notice of Compensation Payable (NCP) recognizing the work injuries.

3

facility known as the Derry Office located at 555 Route 217, Suite 3, Latrobe, Pennsylvania (Latrobe Facility). The pt Group, a Medicare Part B provider, owns the Latrobe Facility and employs its physical therapy and administrative staff. However, pursuant to a Master Office Space Sublease Agreement and Staffing Agreement, it then "leases" its facility and physical therapists to The Physical Therapy Institute (PTI), a Medicare Part A provider, for set periods of time for the purpose of treating workers' compensation (WC) clients.

Claimant received treatment for his work injuries at the Latrobe Facility and PTI submitted bills to Insurer totaling $9,564.62. Insurer denied those bills because it believed the pt Group performed Claimant's physical therapy and not PTI, explaining:

> The Physical Therapy Institute is not the entity which provided the PT services represented on the submitted bill and therefore is not entitled to payment under the medical cost containment provision of the Act.

(*See, e.g.*, Reproduced Record (R.R) at 560a.)

In February 2011, Claimant filed a penalty petition, later amended to include a petition for review of medical treatment and/or billing (medical review petition),[3] contending that Employer and Insurer (collectively, Employer) failed to

---

[3] Claimant amended his penalty petition to include a medical review petition in light of this Court's decision in *Selective Insurance Company of America v. Bureau of Workers' Compensation Fee Review Hearing Office (The Physical Therapy Institute)*, 86 A.3d 300 (Pa. Cmwlth. 2014), which involved nearly identical facts and, other than Claimant, the same parties. There, we held that the Bureau of Workers' Compensation Fee Review Hearing Office lacks jurisdiction to **(Footnote continued on next page…)**

4

pay reasonable, necessary and causally-related medical expenses incurred by Claimant for treatment of his work-related injuries. Employer timely filed Answers denying all material allegations.

## III.

## A.

Before the WCJ, Claimant testified that he received physical therapy for his work injuries at the Latrobe Facility and, as far as he knew, the physical therapy was provided by the pt Group. Although he did not understand the meaning of the document, Claimant confirmed that he signed a Disclosure Statement providing, in pertinent part:

> The Physical Therapy Institute and THE pt GROUP are partners in a joint venture to provide physical therapy services to a wide range of clients. Workers' compensation clients will be treated by therapists of the Physical Therapy Institute unless your employer has an independent contract with THE pt Group for such services . . . .

(R.R. at 286a, 774a.)

---

**(continued…)**

determine whether an entity is a "provider" of medical services as opposed to simply being a billing agency because this is a question of liability or possibly insurance fraud, both of which are beyond the scope of a fee review. We also held that the Bureau's Medical Fee Review Section lacked jurisdiction to consider PTI's fee review petitions in the first instance.

To explain the relationship between PTI and the pt Group, Claimant presented the testimony of Michael Cassidy (Attorney Cassidy), the attorney who drafted the office and staff leasing arrangement between PTI and the pt Group in November 2006. He explained that the leasing arrangement is the result of a joint venture between PTI and the pt Group to provide resources, staff and office leases to PTI at a variety of locations so that PTI could expand its WC practice in the most cost-efficient manner. He explained that "the staff is leased in the same way you would get part-time providers from a staffing service or a local temp agency" and that this type of staff and leasing arrangement is "[v]ery common" because "there are rules under Medicare, for example, that specifically allow the incorporation of leased employees into the provider contracts for Medicare patients and [WC] patients." (R.R. at 112a-113a.)

Attorney Cassidy went on to testify that the Centers for Medicare and Medicaid Services (CMS) has approved approximately 26 locations submitted by PTI involving this leasing arrangement, including the Latrobe Facility, and the Bureau of Workers' Compensation (Bureau) has been aware of the leasing arrangement since 2007. He stated that no objections to this arrangement have been made by either CMS or the Bureau, and despite an investigation conducted by the Office of the Attorney General, there was no finding that the joint venture was illegal, improper or otherwise in violation of any applicable law. Attorney Cassidy opined that the staff and facility leasing arrangements are "entirely appropriate within the recognized reimbursement rules for Medicare that the Workers' Compensation Bureau follows and that there's no problem with the arrangement." (R.R. at 160a.)

Attorney Cassidy testified that after he was made aware that Insurer was refusing to pay Claimant's medical bills issued by PTI, he contacted Insurer and explained the legal basis for PTI's entitlement to bill as Claimant's provider. He provided Insurer with documentation confirming PTI's right to receive payment but did not send Insurer a copy of the actual leasing agreements between PTI and the pt Group due to concerns relating to confidentiality.

Ryan Christoff, PTI's president, testified about the relationship between PTI and the pt Group. He explained that PTI leased space and employees from the pt Group for PTI's workers' compensation business, and that PTI paid a flat rate to the pt Group for use of the facility and use of employees. The leased employees were employees of the pt Group but were independent contractors with respect to PTI under a staffing lease agreement. He noted, however, that PTI also employs physical therapists but they do no work for the pt Group. Regarding billing practices, he denied that PTI is billing for work performed by the pt Group. He explained that where the pt Group had contracts with certain companies or if the patient was non-workers' compensation, the patient was treated by the pt Group while the WC patients were treated by PTI.

Michael Smith, a senior investigator for Employer's insurance carrier, Selective Insurance Company, testified that from his review of Claimant's bills, it was unclear which was providing the service, but he believed that PTI was not the actual health care provider. He acknowledged, though, that after he started his investigation, he spoke with Attorney Cassidy regarding the questions that he had about the relationship between PTI and the pt Group, and that Attorney Cassidy

7

indicated that the original agreements had been provided to the Office of the Attorney General. He acknowledged that he had no information from CMS, the Bureau or any state or federal law enforcement agency indicating that the arrangement between PTI and the pt Group was unlawful or fraudulent.

Claimant also presented the testimony of Sherry Myers (Myers), Selective Insurance Company's lead bill reviewer, and Charita Farley (Farley), a medical claims specialist for Eastern Alliance Insurance Group. Myers testified that when the bills at issue were brought to her attention, they were denied because, based on a review of the bills and Claimant's medical records, the provider that billed the treatment, PTI, was not the provider that rendered the treatment. Farley testified that nothing on the face of the bills in question indicated that they should not be paid or that the provider billing the treatment was not the provider rendering the treatment.

Employer presented the testimony of Joseph Chrillo (Chrillo), one of the pt Group partners, who explained that the pt Group is the actual owner or direct lessor of the Latrobe Facility which is subleased to PTI on an as-needed basis as is staff to provide physical therapy services. Chrillo acknowledged that the secretary taking information from a new patient is an employee of the pt Group, but if it is determined that the patient is a PTI patient, the secretary then functions as a PTI employee. He further stated that the physical therapists are pt Group employees and are leased to PTI to treat PTI patients.

Dale Cordial (Cordial), owner of the pt Group, described the arrangement as a joint venture of the pt Group and PTI. He testified that PTI

subleased space from the pt Group for a certain number of hours per week, and that when patients were registered, they were identified as either a PTI or pt Group patient. He testified that when a physical therapist saw a patient, the therapist generated a billing slip from which the billing office entered the charges and codes and transmitted them to PTI. The billing office employees were pt Group employees. PTI generated its own bills. Cordial testified that the joint venture allowed the pt Group to maximize its staffing and space in underutilized areas and provided regular cash flow through the lease payments.

Mary Rectenwald testified that she was the physical therapist who provided the services to Claimant that are at issue in this matter. She confirmed that she is an employee of the pt Group but also acts as a leased employee of PTI. She testified that she did not personally inform Claimant that his therapy was provided by PTI but confirmed that he was provided with information about the joint venture. She also confirmed that she provided Claimant's treatment as a leased employee of PTI.

Employer also presented the testimony of Lorie Myers, who is employed by Insurer as a WC supervisor and has 33 years of experience in WC claims management. She stated that the reason the billing for Claimant was denied was due to billing discrepancies brought to her attention regarding which was actually providing the therapy and billing Insurer.

9

Linda Schmac (Schmac), the owner and president of Premier Comp Solutions,[4] testified that she was aware of the leasing arrangement for space and employees between PTI and the pt Group, but that she had never come across this type of leasing arrangement in her 23 years of work, nor had she heard of any leasing arrangement between a Part A provider and a Part B provider for physical therapy. She also testified that she reported PTI and the pt Group's relationship to the Office of the Attorney General, CMS and the Bureau.[5]

## B.

Finding credible Attorney Cassidy's testimony that the joint venture has been disclosed to CMS and the Bureau and investigated by the Office of the Attorney General with no finding of illegality, and concluding that Employer has failed to produce any evidence that would refute the testimony of Attorney Cassidy, the WCJ granted Claimant's penalty and medical review petitions. The WCJ noted that Employer did not dispute that Claimant received the physical therapy treatment outlined on the bills submitted by PTI or that the bills remain unpaid and outstanding. Because Employer never received any indication from any federal or state authority that the billing arrangement between PTI and the pt Group was impermissible in any way, the WCJ found that Employer did not have a reasonable basis to contest the

[4] Premier Comp Solutions is a company engaged in medical management, medical cost, workers' compensation medical cost containment services, and medical bill review and repricing.

[5] Throughout these proceedings, various testimonies were offered regarding Schmac as it pertains to her former business relationship with PTI and a withdrawn lawsuit commenced by PTI against Schmac. The WCJ did not find this testimony to be particularly relevant or germane to the issues involved in this case.

matter and ordered Employer to pay Claimant's attorney's fees in the amount of $83,400.00, reflecting 333.6 hours at $250.00 per hour. The WCJ also ordered that Employer reimburse Claimant's counsel for all reasonable and necessary litigation costs incurred in the amount of $3,328.32.

Employer then appealed to the Board, contending that the WCJ failed to take into account the totality of the evidence and the actual operation of the entities in question in finding that PTI provided the physical therapy. Arguing that the evidence establishes that services were provided by the pt Group employees and billed by PTI at Part A rates, Employer alleged that the staffing and leasing agreements are an improper means to avoid the cost containment provision of the Act. Employer also contended that the WCJ's conclusion that Employer engaged in an unreasonable contest was factually erroneous and not the product of a reasoned decision.

Noting that the WCJ found credible Attorney Cassidy's testimony that the joint venture was legal and found credible Farley's testimony that there was nothing on the face of the bills and supporting documentation to indicate that the bills should not be paid or that the provider billing the treatment was not the provider rendering the treatment, the Board found that the WCJ's decision was grounded in credibility determinations, which were his to make, and affirmed the WCJ.

With regard to the issue of attorney's fees, the Board reasoned that the WCJ did not err in concluding that Employer's contest was unreasonable because the WCJ found that Employer failed to submit any evidence to refute PTI's status as the provider or any evidence to demonstrate any illegality about the joint venture. The

11

Board further noted that the WCJ found that Claimant's witnesses' testimonies supported the legitimacy of the joint venture, which Employer could not contradict. Finally, the Board found that the WCJ properly found that Employer had no factual or legal basis for its belief that the treatment was not actually rendered by the provider that billed for the services. Employer then filed this petition for review.[6]

## IV.

### A.

The determinative issue in this appeal is whether the WCJ correctly found that the joint venture between PTI and the pt Group was lawful, thereby enabling PTI to bill for services rendered. Because the physical therapy services were rendered to Claimant by the pt Group and billed by PTI, Employer argues that the pt Group is the health care provider, not PTI and, thus, PTI is not entitled to payment under the Act. Employer asserts that "[a]s a Part B provider, pt Group portrayed themselves [sic] as the provider to [Claimant] and allowed PTI to represent themselves [sic] to [Insurer] as the provider in order to charge Part A rates." (Employer's Brief at 15-16.) Employer argues that because the pt Group is the provider, services should be billed at the Part B rate and its insurance company did not violate the Act by not paying PTI's bills.

---

[6] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

Section 306(f.1)(1)(i) of the Act requires that employers pay "for reasonable surgical and medical services, services rendered by physicians or other health care providers . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). Employers must pay a claimant's medical bills within 30 days of receiving them "unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to [Section 306(f.1)(6) of the Act, 77 P.S. § 531(6)]." 77 P.S. § 531(5).

Here, there is no dispute as to whether Claimant's physical therapy treatment was necessary or whether Employer needs to pay for his treatment. Rather, the conflict is over whether Employer needs to pay PTI's bills given that it believes that the pt Group was the health care provider. As noted by the WCJ, the agreement between PTI and the pt Group, under which PTI leases space and staff from the pt Group and bills insurance carriers for the services provided to patients, is acceptable under the applicable law. The WCJ relied on and found as entirely credible Attorney Cassidy's testimony with which he established that CMS and the Bureau are aware of the joint venture, and that the joint venture had been investigated by the Office of the Attorney General with no finding of illegality. Moreover, the WCJ found that the evidence produced by Employer did not contradict the finding that the joint venture was lawful. Employer provides no analysis or reasons that we should find otherwise.

**B.**

Employer next contends that the Board abused its discretion when assessing a 50 percent penalty fee because Employer established a reasonable basis to deny payment of the medical bills in light of the complex facts of this case, the

13

leasing arrangement between PTI and the pt Group, and the fact that Claimant's physical therapist and PTI's staff are employed by the pt Group.[7]

Section 435(d)(i) of the Act[8] gives a WCJ discretion to impose a penalty which "may be increased to fifty per centum in cases of unreasonable or excessive delays." Here, Employer persisted in denying PTI's bills and, as the WCJ found, then failed to submit any evidence or credible testimony to refute PTI's status as the provider or demonstrate that there was anything illegal or improper about the leasing arrangements between PTI and the pt Group. Accordingly, the WCJ did not abuse its discretion in imposing a 50 percent penalty.

## C.

Not challenging the amount, Employer contends that the WCJ erred by awarding Claimant unreasonable contest attorney's fees because it presented a reasonable contest. Pursuant to Section 440(a) of the Act,[9] 77 P.S. § 996, in any

---

[7] While a claimant bears the initial burden of establishing a violation under the Act, once a violation is established, the burden shifts to the employer to demonstrate that the violation did not occur. *Futura Agency, Inc. v. Workers' Compensation Appeal Board (Marquez),* 878 A.2d 167, 172 (Pa. Cmwlth. 2005). The assessment and amount of penalties is a matter for the WCJ's discretion, which this Court will not reverse absent an abuse of discretion. *Westinghouse Electric v. Workers' Compensation Appeal Board (Weaver),* 823 A.2d 209, 213-14 (Pa. Cmwlth. 2003).

[8] Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d)(i).

[9] Section 440(a) of the Act was added by the Act of February 8, 1972, *as amended*, and provides:

> (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify

**(Footnote continued on next page…)**

14

contested case where an insurer contests liability in whole or in part, a WCJ shall award counsel fees to an employee in whose favor the matter has been finally adjudicated unless the employer provides a reasonable basis for the contest. "Section 440 . . . is intended to deter unreasonable contests of workers' compensation claims and to ensure that successful claimants receive compensation undiminished by costs of litigation." *Eidell v. Workmen's Compensation Appeal Board (Dana Corp.)*, 624 A.2d 824, 826 (Pa. Cmwlth. 1993) (citation omitted). The issue of whether an employer's contest is reasonable is a legal conclusion based on the WCJ's findings of fact. *Yespelkis v. Workers' Compensation Appeal Board (Pulmonology Associates Inc.)*, 986 A.2d 194 (Pa. Cmwlth. 2009). The reasonableness of an employer's

---

**(continued…)**

> compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fees, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney's fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.
>
> (b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. § 996.

15

contest depends on whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant. *Id.*

In the present case, the WCJ found that Employer had failed to sustain its burden of proving a reasonable contest, explaining in pertinent part:

> . . . Employer denied the medical bills at issue alleging that PTI was not the provider of the services. However, the Employer has failed to submit any evidence during the course of these proceedings to refute PTI's status as the provider of the treatment at issue. The Employer has failed to submit any evidence contrary to PTI's position that the treatment was rendered by PTI in connection with a joint venture that was entered into between PTI and [pt Group], which was the basis for the Employer denying the bills. The Employer has not offered any evidence to demonstrate that there was anything illegal or improper about the joint venture between PTI and [pt Group]. To the contrary, the [i]nsurer's senior investigator, Mr. Smith, admitted that he had developed no evidence during the course of his investigation that the joint venture was in [any] way illegal or improper.

(R.R. at 35a, ¶17.) Given Employer's failure to provide any evidence that establishes the alleged illegality of the joint venture or PTI's status as a health care provider, we agree with the WCJ that Employer engaged in an unreasonable contest and the award of attorney's fees is proper.

16

Accordingly, the order of the Board is affirmed.


_____
DAN PELLEGRINI, Senior Judge


Judge Hearthway did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derry Township Supervisors and :
Selective Insurance Company of :
America, :
     Petitioners :
         :
    v.    : No. 751 C.D. 2016
         :
Workers' Compensation Appeal :
Board (Reed), :
     Respondent :

## **O R D E R**

AND NOW, this 30<u>th</u> day of <u>January</u>, 2017, it is hereby ordered that the order of the Workers' Compensation Appeal Board dated April 13, 2016, is affirmed.

_____
DAN PELLEGRINI, Senior Judge